### CHRISTIE-STREET COMMISSION CO. v. UNITED STATES.

(Circuit Court, W. D. Misouri, W. D. December 21, 1903.)

#### No. 2,731.

1. UNITED STATES—ACTIONS AGAINST—JURISDICTION OF CIRCUIT COURTS.

Under Act March 3, 1887, c. 359, § 1, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752], whether, in view of the discussion by Mr. Justice Brown, in Dooley v. United States, 182 U. S. 222, 21 Sup. Ct. 762, 45 L. Ed. 1074, that a United States Circuit Court has jurisdiction of a suit to recover from the United States taxes claimed to have been illegally exacted from plaintiff by a collector under color of the internal revenue laws, quære.

2. SAME—SUIT TO RECOVER TAXES PAID.

An action cannot be maintained to recover taxes voluntarily paid to the United States, except by virtue of some statute authorizing it.

3. SAME—RECOVERY OF INTERNAL REVENUE TAXES—LIMITATION.

Rev. St. § 3226 [U. S. Comp. St. 1901, p. 2088], provides that no suit shall be maintained for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected until appeal shall have been duly made to the Commissioner of Internal Revenue, and a decision has been had therein, or unless such decision is delayed more than six months. in which case the suit may be brought, without such decision, at any time within the period limited by the next section. Section 3227 [U. S. Comp. St. 1901, p. 2089] provides that such suit shall not be maintained unless brought within two years after the cause of action accrued. Held that, on the expiration of six months after such an appeal without its having been acted on, a right of action accrued, and became barred in two years thereafter.

4. SAME.

Act March 3, 1887 (chapter 359, § 1, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]), providing generally for the bringing of suits against the United States, and limiting such suits to six years after the right accrued, did not supersede Rev. St. §§ 3226, 3227 [U. S. Comp. St. 1901, pp. 2088, 2089], specifically authorizing suits for the recovery of internal taxes paid, and claimed to have been erroneously or illegally assessed or collected, within two years after an appeal has been taken and determined by the department; and such suits are governed by the limitation contained in those sections, which is made one of the conditions of the right of action thereby given.

Action to Recover Internal Revenue Taxes Paid. On demurrer to petition.

Harkless, O'Grady & Crysler, for plaintiff.
Wm. Warner and A. S. Van Valkenburgh, for defendant.

PHILIPS, District Judge. The plaintiff brings this suit against the United States to recover back the sum of $4,811.76, alleged to

have been unlawfully demanded of it and received by the collector of internal revenue at Kansas City, Mo., under the act commonly known as the "War Revenue Law of 1898" (Act June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286]), in excess of the taxes due from the plaintiff, who is alleged to have been engaged in the business of buying and selling goods, merchandise, stocks, bonds, grain, and provisions at Kansas City. The petition charges that the said collector demanded and collected taxes under Schedule A (30 Stat. 458 [U. S. Comp. St. 1901, p. 2301]), in reference to stamp taxes, which imposed upon each sale, agreement of sale, or agreement to sell products or merchandise on any exchange or board of trade, either for present or future delivery, for each $100 in value of said sale, or agreement of sale, etc., 1 cent, and for each additional $100, or fractional part thereof, in excess of $100, 1 cent, instead of demanding and collecting the taxes contained in another provision of said revenue law, which imposed a revenue tax of 10 cents upon each memorandum of sale. The petition alleges that, under the construction given to said revenue law by the Commissioner of Internal Revenue, the said local collector insisted that the plaintiff company was taxable under the first of the provisions above referred to, while the plaintiff insisted that it was taxable only under the latter of the above-cited provisions; that the plaintiff paid said alleged excessive tax under protest; that the same was illegal and wrongful; that, notwithstanding the Commissioner's department subsequently ruled that the former construction placed on this revenue act in respect of the plaintiff's liability thereunder was erroneous, he refused and neglected to make restitution of the excessive taxes so paid by the plaintiff; that afterwards the plaintiff made its written application to the Commissioner, as provided by statute, for review, and request for restitution, which the Commissioner for more than six months thereafter neglected to act upon, and does not intend to act upon. To this petition the defendant has demurred, which demurrer has been submitted to the court on briefs of the respective counsel.

The questions which have been principally argued in the briefs of counsel are, first, as to the jurisdiction of this court over the subject-matter of the suit; and, second, as to whether or not the plaintiff has any cause of action.

By Act March 3, 1887, c. 359, § 1, 24 Stat. 505, 1 Supp. Rev. St. 559 [U. S. Comp. St. 1901, p. 752], jurisdiction was conferred upon United States courts, concurrently with that of the Court of Claims, in the following language:

"All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity or admiralty if the United States were suable."

Viewing this statute from the standpoint of long-recognized principles and definitions of law, it would seem to be an absurdity that a liability for the wrong complained of arises on a contract, expressed

or implied. It is a fundamental element of all contracts, expressed or implied, that there should exist the aggregatio mentium—the meeting of the minds of the parties in accord, either by expression or implied acquiescence. As said by Mr. Justice Brewer, in speaking to a kindred question, in Schillinger v. United States, 155 U. S. 163, 169, 170, 15 Sup. Ct. 87, 39 L. Ed. 108:

"The successive allegations [of the petition] place the parties in continued antagonism to each other, and there is no statement tending to show a coming together of the minds in respect to anything. * * * There was no point in the whole transaction, from its commencement to its close, where the minds of the parties met, or where there was anything in the semblance of an agreement."

The petition at bar throughout alleges, in substantive effect, that the entire conduct of the collector of internal revenue was unlawful; that the plaintiff's mind never acceded to the wrongful demand, but that it made the payments under protest. The minds of the parties never met in respect of the matter. The petition alleges that the proceeding and act of the collector in demanding, and the government in receiving, the tax, was done "illegally, and without authority of law, and against the protest of this plaintiff."

Even if the rule of waiving the tort and suing in assumpsit were applicable, there is no implied contract in this case. Mr. Justice Brewer, in the Schillinger Case, supra, points out with admirable clearness the constituent elements of an implied contract, by illustration drawn from the case of United States v. Russell, 13 Wall. 623, 626, 20 L. Ed. 474. That was a case to recover for the use of certain steamers, the property of the claimant, taken and used by the government. The officers did not intend to appropriate the steamers, nor their services, but intended to compel the captains and crews, with such steamers, to perform the services needed, "and to pay a reasonable compensation for such services, and such was the understanding of the claimant." The learned justice said:

"Thus it appears that the minds of the claimants and the officers acting for the government met; both intended a contract; and, the power of the officers to act for the government in the premises not being disputed, it was obviously just to treat the case as one of contract, and not of tort."

Then, referring to the case of United States v. Great Falls Manufacturing Company, 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846, the court said:

"The appropriation of the claimants' property was under direct legislative enactment by Congress. The property thus appropriated was confessedly the property of the claimants, to which the government made no pretense of title. The claimants assented to such appropriation—entered into arbitration proceedings to determine the amount due them therefor. Hence all the elements of contract were found in the transaction."

It would likewise seem to be a solecism, or contradiction in terms, to speak of a suit bottomed on the assertion that a revenue tax had been wrongfully exacted of the claimant being wholly unauthorized by any law of Congress, for the recovery thereof is founded on a law of Congress. The very gravamen of the petition is that the collector, outside of any law, had demanded and received the tax. If so, the act

was as if Congress had never enacted any law; and the liability, if any, would seem to spring from the fact that the act of the officer was a bald usurpation.

But discussion is rather academic than useful in the face of superior authority. If I rightly read the opinion of Mr. Justice Brown, who delivered the majority opinion in Dooley v. United States, 182 U. S. 222, 21 Sup. Ct. 762, 45 L. Ed. 1074, the court held that the United States Circuit Court has jurisdiction of an action for the recovery of customs duties illegally exacted upon merchandise alleged not to have been imported from a foreign country. It is not clear to my mind whether this ruling was based upon a construction of the customs administrative act of 1900, or on the general proposition that it arose under a "law of Congress." The reasoning of the court, it seems to me, should equally apply to an action brought for the recovery of the tax illegally exacted under color of the internal revenue laws.

Conceding the question of jurisdiction of this court over the subject-matter of the controversy, the next question for determination is, has the plaintiff a cause of action for which he may sue in this court? It is a well-settled rule of law that an unauthorized tax, which the payor is under no obligation to pay, if voluntarily paid by him, cannot be recovered back. Cooley, in his work on Taxation (2d Ed.) p. 809, says:

"A tax voluntarily paid cannot be recovered back, * * * and it is immaterial in such a case that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back."

In his work on Municipal Corporations (3d Ed.) §§ 944–946, Judge Dillon says:

"Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an illegal tax, cannot—there being no coercion, no ignorance or mistake of facts, but only ignorance or mistake of law—be recovered back from the corporation, either at law or in equity, even though such tax should not have been legally demanded or enforced. Where there is no mistake or fraud, a voluntary payment cannot be recovered on the mere ground that the one party was under no legal obligation to pay, and the other party had no right to receive. Where the party would recover back taxes which he is under no legal obligation to pay, the payment must be compulsory."

The authorities on this question are reviewed in Yates v. Royal Insurance Company (Ill.) 65 N. E. 726, by the Supreme Court of Illinois, in which it is held that a tax paid under an act declared to be unconstitutional cannot be recovered by the payor.

In Wabaunsee County v. Walker, reported in 8 Kan. 431, the court said:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that

the party at the time of making the payment files a written protest does not make the payment involuntary."

This utterance was approved by the Supreme Court of the United States in Railroad Company v. Commissioners, 98 U. S. 541, 25 L. Ed. 196; the court saying, "This, as we understand it, is a correct statement of the rule of the common law."

The petition in the case at bar does not aver that there was any duress, coercion, seizure, or sequestration of the plaintiff's property, or even a threat thereof, by the collector. The payment thus has all the elements of a voluntary payment, on which no cause of action for restitution arose at common law. Therefore, to entitle the plaintiff to maintain this action, it must be bottomed on some legislative enabling act. To this end, the plaintiff invokes section 3226, Rev. St. U. S. [U. S. Comp. St. 1901, p. 2088], which reads as follows:

"No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of the law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein: provided, that if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section."

It is apparent on the face of the petition that the plaintiff framed it with a view to said section. It alleges that the taxes in question were exacted by the local collector at Kansas City, and paid by the plaintiff between the 1st day of July, 1898, and the 15th day of August, 1899, and—

"That on or about the ——— day of October, 1899, this plaintiff filed its written application with the Internal Revenue Department of the United States, at Washington, D. C., to wit, the Internal Revenue Commissioner, representing the government, asking the refunding of said tax so illegally levied and paid as aforesaid, and that ever since said date the said United States of America, through its Internal Revenue Department, have absolutely ignored said claim, and wholly failed, neglected, and refused to refund the same to this plaintiff, but continually, and from time to time, upon one subterfuge or another, have delayed and refused to finally act upon said claim, and, as the plaintiff now alleges and believes, never will act upon it, and it is not their intention to do so."

The succeeding section—3227 [U. S. Comp. St. 1901, p. 2089]—declares that—

"No suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority or of any sum alleged to have been excessive, or in any manner wrongfully collected, shall be maintained in any court, unless the same is brought within two years next after the cause of action accrued."

As no government can be subjected to a suit by the citizen without its consent, as said by the Supreme Court in Cheatham et al. v. United States, 92 U. S. 85, 88, 89, 23 L. Ed. 561:

"It will be readily conceded from what we have stated that the government has the right to prescribe the conditions upon which it will subject itself to

the judgment of the courts in the collection of its revenues. * * * In the internal revenue branch it has further prescribed that no such suit shall be brought until the remedy by appeal has been tried, and, if brought after this, it must be within six months after the decision on the appeal. We regard this as a condition on which alone the government consents to litigate. the lawfulness of the original tax. It is not a hard condition. Few governments have conceded such a right on any condition."

So, in Snyder v. Marks, 109 U. S. 189, 193, 3 Sup. Ct. 160, 27 L. Ed. 901, Mr. Justice Blatchford, in discussing a kindred question, said:

"The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. Such has been the current of decisions in the Circuit Courts of the United States, and we are satisfied it is a correct view of the law. * * * The system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures, not judicial, to collect them, with appeals to specified tribunals, and suits to recover back moneys illegally exacted, was a system of corrective justice, intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues."

This suit was filed on the 14th day of November, 1902—more than 3 years after the payment of said taxes by the plaintiff, and 2½ years after the lapse of the 6 months following the presentation of the claim to the Commissioner of Internal Revenue for review. The six months allowed by the statute to the Commissioner for the investigation of the claim and decision thereon was deemed by Congress to be a reasonable delay after the presentation of the appeal to him by the taxpayer; and he having failed, neglected, and refused, as the petition alleges, to act thereon, the right of action under the statute accrued to the plaintiff in April, 1900. So that the cause of action accrued more than two years before this suit was brought. The cause of action accrues, within the meaning of the statute of limitations, as soon as the actor has the right to sue, and not when he sees fit to proceed. Tapley et al. v. McPike, 50 Mo. 591; 19 Am. & Eng. Enc. of Law, p. 193, § 2.

It has been held that where a right of action does not exist at common law, but is given by virtue of an enabling statute, wherein there is a specified limitation on the right to sue, such limitation becomes an integral part of the cause of action, and after the lapse of the prescribed period the right of action is at an end. The prescribed period is a condition precedent to the right of action, and is not a mere limitation on the remedy. Railroad Company v. Hine, Administrator, 25 Ohio St. 629; Eastwood v. Kennedy, 44 Md. 563; Boyd, Administrator, v. Clark (C. C.) 8 Fed. 849; Finnell v. Southern Kansas Ry. Co. (C. C.) 33 Fed. 427.

The contention of plaintiff's counsel, to extricate himself from the dilemma of the statute of limitations, is that the period of limitation applicable to this case is prescribed in the proviso to section 1, subd. 2, of the act of March 3, 1887, which is as follows:

"That no suit against the government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made." 24 Stat. 505 [U. S. Comp. St. 1901, p. 752].

There are several answers to this suggestion. Jurisdiction is conferred on the Court of Claims, which also applies to United States courts, by the first section of said act—such as claims founded upon the Constitution of the United States, or any law of Congress, or upon any contract, expressed or implied, with the government, or for damages, liquidated or unliquidated, in cases not sounding in tort, etc. As there is no special limitation of law as to most of these actions, Congress, in said proviso, fixed the ultimate limit at six years. It is, however, a well-settled rule of construction of such statutes that such general provision does not conflict with a special limitation declared in another statute, creating a particular cause of action, and prescribing the time within which it shall be brought.

There is an important reason why Congress should prescribe a short limitation in respect of suits and proceedings to recover back moneys paid as taxes under the internal revenue laws. Such taxes are the principal source from which revenue is derived for the support and operation of the general government. It is altogether important that Congress, in making the annual appropriations, should know from time to time what amounts of revenue have hitherto been raised within the approximate preceding period through the internal revenue department, and how much money is on hand. It is also essential to the proper protection of the treasury of the government that claims for such drawbacks should be presented in a short time, so that the same may be investigated and reviewed by those officers in a position likely to have knowledge of the transactions out of which the claims for restitution arise, as these officers, under succeeding administrations, are repeatedly changing.

The ultimate position assumed by plaintiff's counsel is that, independent of the provision of said section 3226 of the Revised Statutes, the plaintiff was authorized by the act of March 3, 1887, to institute its suit in this court in the first instance, and therefore the cause of action was subject alone to the operation of the limitation of six years prescribed in the proviso to the second section of the act. The answer to this is, first, that, as a matter of fact, the plaintiff did present its claim for relief to the Commissioner of Internal Revenue, and did press its allowance there until after the expiration prescribed by that statute for bringing suit. In other words, it saw fit to take the course prescribed by said section 3226, and yet seeks to escape some of the provisions of said statute. In the second place, this dernier resort of counsel utterly ignores the further fact, as already shown in this opinion, that at common law the plaintiff had no cause of action against the United States to recover back the taxes paid, for the reason that they were voluntarily paid; and, therefore, to maintain the action, the plaintiff must invoke some special enabling statute authorizing such suit. To this end, in the first brief submitted on the demurrer, recourse was necessarily had to said section 3226 of the Revised Statutes. If said section be applicable, the succeeding section (3227), limiting the time for suing, likewise applies. They are inseparable. The plaintiff must take the right thereby given, burdened with the conditions and limitations imposed. It cannot halve it, nor in less degree subdivide it. If this statute has no application, as intimated in

the final argument of counsel, then the plaintiff has no cause of action at all against the United States.

The court is of opinion that it was not in the mind of Congress, in extending the matter of jurisdiction to the Court of Claims and United States courts by the act of 1887, to abrogate and wipe out the vital provisions of said sections 3226 and 3227, which are carried forward into the Compiled Statutes of 1901 [U. S. Comp. St. 1901, pp. 2088, 2089]. In other words, it is inconceivable that Congress, by said act of 1887, intended to authorize the taxpayer, who had been required to pay more taxes under the internal revenue laws than were due, to go around the collector and the Commissioner of Internal Revenue, the executive branch of the government, to which the management and' control of the collection of such taxes is committed, and sue the government any time within six years after the cause of action accrued, especially in cases like the one at bar, where, but for the provision of said section 3226, the plaintiff would have no right to sue.

The demurrer is therefore sustained.