## ARDEN *v.* UNITED STATES (No. 2408)[1]

1. CONSTRUCTION—REPEALS BY IMPLICATION.

    While it is the general rule that a later statute covering the whole subject matter of another repeals it unless the contrary appears, repeals by implication are not favored, especially as to revenue laws, and special provisions are not affected.    It must, however, appear, from a consideration of the new legislation, that it was the intent of the legislative authority to substitute the later law for the prior one.

2. CONSTRUCTION—REVENUE ACT OF 1918 AND TARIFF ACT OF 1922 DO NOT COVER SAME SUBJECT.

    By the legislative practice since 1787, by the expressed congressional opinion as evidenced by its parliamentary practice, and by a comparision of the revenue act of 1918 (approved February 24, 1919) with the Tariff Act of 1922, it is patent that Congress did not intend to, and did not, cover the same general subject matter in the two acts within the rule of repeal by implication.

3. CONSTRUCTION, PARAGRAPH 62, TARIFF ACT OF 1922, AND SECTION 600 (c) TITLE IV, REVENUE ACT OF 1918—BOTH OPERATIVE—DOUBLE TAX ON ALCOHOLIC PERFUMES.

    The revenue act of 1918 (approved February 24, 1919) was intended as a general revision of the internal-revenue system and the Tariff Act of 1922 was intended as a general revision of customs duties.    That part of paragraph 62 of the tariff act, which taxes alcoholic perfumery was not intended as a substitute for section 600 (c), Title IV, of the revenue act, which also taxes imported perfumes containing distilled spirits, and both are operative.

### United States Court of Customs Appeals, April 29, 1925

APPEAL from Board of United States General Appraisers, Abstract 47029

[Affirmed.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Edward J. Neary,* special attorney, of counsel), for the United States.

[Oral argument Nov. 17, 1924, by Mr. Halstead and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported alcoholic perfumery in 1923.    This was assessed for duty by the collector at 40 cents per pound and 75 per centum ad valorem under paragraph 62 of the Tariff Act of 1922 and with an additional tax of $1.10 per wine gallon under section 600 (c) of the revenue act of February 24, 1919.   On appeal, the Board of General Appraisers sustained the assessment made by the collector.

[1] T. D. 40879

The importer contends the Tariff Act of 1922 has repealed, by implication, section 600 (c) of the revenue act of February 24, 1919, and this is the single question involved here. It is conceded there is no special repeal by said tariff act of section 600 (c) of the said revenue act of 1919.

The two provisions of law involved are as follows:

Paragraph 62, Tariff Act of 1922—

Perfumery, including cologne and other toilet waters, articles of perfumery, whether in sachets or otherwise, and all preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, tooth soaps, pastes, theatrical grease paints, pomades, powders, and other toilet preparations, all the foregoing, if containing alcohol, 40 cents per pound and 75 per centum ad valorem; if not containing alcohol, 75 per centum ad valorem.

Section 600 (c), revenue act of 1919—

In lieu of the internal-revenue tax now imposed thereon by law there shall be levied and collected upon all perfumes hereafter imported into the United States containing distilled spirits, a tax of $1.10 per wine gallon, and a proportionate tax at a like rate on all fractional parts of such wine gallon. Such tax shall be collected by the collector of customs and deposited as internal-revenue collections, under such rules and regulations as the Commissioner, with the approval of the Secretary, may prescribe.

The rule is that where a revising statute covers the whole subject matter of antecedent statutes, the revising statute repeals the antecedent enactment, unless there is something in the nature of the subject matter or the revising statute to indicate a contrary intention. This has been the uniform holding of the courts of last resort in the United States. *United States* v. *Tynen,* 11 Wall. 88; *Murdock* v. *City of Memphis,* 20 Wall. 590 [617]; *Kohlsaat* v. *Murphy,* 96 U. S. 153; *Tracy* v. *Tuffly,* 134 U. S. 206; *Eckloff* v. *District of Columbia,* 135 U. S. 240; *Fisk* v. *Henarie,* 142 U. S. 459; *District of Columbia* v. *Hutton,* 143 U. S. 18; *United States* v. *Murphy,* 72 Fed. 1008; *Kent* v. *United States,* 73 Fed. 680; *United States* v. *Ranlett & Stone,* 172 U. S. 133. That doctrine has been approved and followed by this court in *Dow Co.* v. *United States,* 7 Ct. Cust. Appls. 343, T. D. 36902.

But in conjunction with this line of authority it must be borne in mind that repeals by implication are not to be favored. It is absolutely essential to the implication of a repeal that the objects of the two statutes are the same, in the absence of any repealing clause. If they are not, both statutes will stand, even though they may refer to the same subject. *United States* v. *Claflin,* 97 U. S. 546; *Red Rock* v. *Henry,* 106 U. S. 596. This is particularly true in cases involving revenue laws. In *United States* v. *Sixty Seven Packages of Dry Goods,* 58 U. S. 85 [93], the court said:

In the interpretation of our system of revenue laws, which is very complicated, and contains numerous provisions to guard against frauds by the importers,

this court has not been disposed to apply with strictness the rule which repeals a prior statute by implication, where a subsequent one has made provision upon the same subject, and differing in some respect from the former, but have been inclined to uphold both, unless the repugnancy is clear and positive, so as to leave no doubt as to the intent of Congress; * * *.

To the same effect are *Fabbri* v. *Murphy*, 95 U. S. 191; *Russell* v. *Worthington*, 23 Fed. 248; and *United States* v. *Gabriel*, 36 Fed. 888. It is also a well-established canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. *Washington Trust Co.* v. *Dunaway*, 169 Fed. 37 [46]; *Christie-Street Com. Co.* v. *United States*, 136 Fed. 326 [333]. The rule is clearly stated in *City Realty Co.* v. *Robinson*, 183 Fed. 176 [181]:

Or the rule may be stated as follows: Where two statutes cover, in whole or in part, the same matter and are not wholly irreconcilable, no purpose to repeal being clearly expressed or indicated, effect is to be given to both, and the former statute will not be considered as being repealed.

And again in *United States* v. *Barnes*, 222 U. S. 513 [520]:

The more natural, if not the necessary inference in all such cases is, that the legislature intends the new laws to be auxiliary to, and in aid of the purposes of the old law, even when some of the cases provided for may equally be within the reach of each. There certainly, under such circumstances, ought to be a manifest and total repugnancy in the provisions, to lead to the conclusion that the latter laws abrogated and were designed to abrogate the former.

There is another element involved in all such cases of repeal by implication, namely, it must appear from a consideration of the new legislation that it was the intent of the legislative authority to substitute the new provisions of law for those claimed to be so repealed. On this point the following authorities are leading:

It is a general rule that when a later statute is a complete revision of the particular subject to which the earlier statute related, and the new legislation *was manifestly intended as a substitute for the former legislation*, the prior act must be held to have been repealed. *Kent* v. *United States*, 73 Fed. 680 [682].

The above language is quoted with approval in *United States* v. *Ranlett & Stone*, 172 U. S. 140.

In *District of Columbia* v. *Hutton*, 143 U. S. 18 [27], it was said:

Yet if the latter act covers the whole subject of the first, and embraces new provisions *plainly showing that it was intended as a substitute for the first act*, it will operate as a repeal of that act.

The italics in the quoted matter are ours.

With these preliminary observations, it is next necessary to determine first whether the Tariff Act of 1922 covers the same general subject matter involved in the revenue act of February 24, 1919.

The second act approved after the convening of the first Congress of the United States was the act of July 4, 1789, entitled "An act for

laying a duty on goods, wares, and merchandises imported into the United States." This act was exclusively a tariff act and levied import duties on many articles. Its preamble stated "Whereas it is necessary for the support of the Government, for the discharge of the debts of the United States, and the encouragement and protection of manufacturers, that duties be laid on goods, wares, and merchandises imported." By the act of July 31, 1789, relative to the collection of import and tonnage duties, the United States was divided into districts, the appointment of collectors, naval officers and surveyors was provided for and a general customs administrative code provided. Peters Stat. at Large, vol. 1, p. 29. This administrative code was further developed and extended by the comprehensive act of August 4, 1790. On March 3, 1791, the first act of Congress was approved which imposed internal duties on domestic distilled spirits and also amended the law relative to duties on imported spirits of the same kind. For a short period after the creation of the Government, and until the customs and internal-revenue administrative machinery had been perfected, there was some attempt, in a legislative way, to deal with the subject of distilled spirits, wines, and teas, not only as to the internal-revenue feature, but as to import duties, in the same acts, but after the proper administrative machinery had been created and placed in operation there was no further attempt to merge these two subject matters in the same legislation. The act of March 3, 1791, above referred to, provided for the creation of internal-revenue districts, and for the appointment of supervisors and inspectors of the revenue; these districts differed in area from the districts created for import duty purposes by the act of July 31, 1789, and the duties of the surveyors appointed thereunder were different from those provided for like officials in the act last named. On May 8, 1792, an act was passed by the Second Congress, entitled "An act concerning the duties on spirits distilled within the United States," which was exclusively an internal-revenue act. This was followed by the act of June 5, 1794, laying duties on retail merchants of wines and spirituous liquors; also by the act of June 5, 1794, laying duties on domestic snuff and refined sugar.

From that time, so far as the court has been able to determine upon examination, the internal revenue and the duties collected on imports have been kept distinct and separate in a legislative way. In the first 53 years of the Nation's history, 28 tariff acts were passed and approved, all of which, with one or two early exceptions, dealt exclusively with import duties, and that practice has continued until the present day. During the same period, numerous internal-revenue acts were enacted but always treated legislatively as distinct from revenue legislation relating to imports. Through the years, as

the financial needs of the Government have required it, internal duties of every nature have been laid—upon tobacco, alcoholic beverages, tonnage duties, direct taxes, stamp taxes, and many other similar duties or taxes, but always as taxes distinct from customs duties.

In some recent instances, notably the tariff act of July 24, 1897, and the tariff act of August 5, 1909, sections were incorporated amending existing internal-revenue acts, but recognizing such internal-revenue acts as distinct and separate legislative matters. Again, in the tariff act of August 27, 1894, provisions for the imposition of an income tax appeared; similar provisions appeared in the tariff acts of August 5, 1909, and October 3, 1913. However, these income tax provisions were inserted in the internal-revenue act of September 8, 1916, and since that time have been placed by Congress in succeeding revisions of our internal-revenue acts. The only modern instance of the merging of internal revenues and customs duty legislation occurred in the internal-revenue act of September 8, 1916, where provision was made for an import duty on dyestuffs. That act, however, was enacted during the World War, and when we were about to become involved in that titanic struggle; it was largely emergency legislation, and can not be properly considered as an exception to the general rule.

All bills for raising revenue originate in the House of Representatives. Const. Art. I, sec. 7. The House of Representatives has, by its parliamentary practice, recognized the clear distinction which exists between bills relating to import duties and internal-revenue measures, and has refused to consider amendments proposing to impose import duties as germane to bills for the purpose of raising revenue by excise taxes and other similar taxes. House Manual and Digest, par. 782 A.

The act of February 24, 1919, is entitled "An act to provide revenue, and for other purposes." These revenues are proposed to be raised by income taxes on individuals and corporations, war and excess profits taxes, estate taxes, transportation and insurance taxes, a tax on beverages, taxes on cigars, tobacco and manufactures thereof, a tax on admissions and dues, excise taxes, special taxes, stamp taxes, and a child labor employment tax, all of which are domestic taxes and to be collected as other internal revenue. Obviously the general subject matter covered by the act is internal revenue only and exclusively.

On the other hand, the Tariff Act of 1922 is entitled "An act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, and for other purposes." It deals only and exclusively with the collection of import duties, all of which are to be collected in a different way, and by different officials from those who collect our internal revenues.

By the legislative practice since 1787, by the expressed congressional opinion, as evidenced by its parliamentary practice, and by a comparison of the revenue act of 1919, and the Tariff Act of 1922, it is patent that Congress did not intend to, and did not, cover the same general subject matter in the two acts mentioned.

We next inquire whether a consideration of paragraph 62 of the Tariff Act of 1922 plainly indicates that this paragraph was intended as a substitute for both paragraph 48 of the tariff act of October 3, 1913, and section 600 (c) of the revenue act of February 24, 1919. This inquiry necessarily leads us into an examination of the antecedents and history of the legislation involved.

The tariff act of October 3, 1913, provided:

SCHEDULE A—CHEMICALS, OILS, AND PAINTS

48. Perfumery, including cologne and other toilet waters, articles of perfumery, whether in sachets or otherwise, and all preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, including tooth soaps, pastes, including theatrical grease paints, and pastes, pomades, powders, and other toilet preparations, all the foregoing, if containing alcohol, 40 cents per pound and 60 per centum ad valorem; if not containing alcohol, 60 per centum ad valorem; floral or flower waters containing no alcohol, not specially provided for in this section, 20 per centum ad valorem.

\* \* \* \* \* \* \*

SCHEDULE H—SPIRITS, WINES, AND OTHER BEVERAGES

237. Brandy and other spirits manufactured or distilled from grain or other materials, and not specially provided for in this section, $2.60 per proof gallon.

The war revenue act of October 3, 1917, contained the following provision:

SEC. 300. That on and after the passage of this act, there shall be levied and collected on all distilled spirits in bond at that time or that have been or that may be then or thereafter produced in or imported into the United States \* \* \*, in addition to the tax now imposed by law, a tax of $1.10 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $2.10) on each proof gallon \* \* \*, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law.

That in addition to the tax under existing law there shall be levied and collected upon all perfumes hereafter imported into the United States containing distilled spirits, a tax of $1.10 per wine gallon \* \* \*. Such tax shall be collected by the collector of customs and deposited as internal-revenue collections, under such rules and regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe.

From a reference to and comparison of the quoted provisions it is apparent that, after the war revenue act of October 3, 1917, became effective, and up until further legislation on the subject, alcoholic perfumes, when imported, were subjected to a double tax, first a customs duty of 40 cents per pound and 60 per centum ad valorem under

the act of October 3, 1913, and a further tax of $1.10 per wine gallon, under the war revenue act of 1917.   Both impositions were collected by the collector of customs; the first, however, was deposited in the Treasury as customs duties collected—the second, as internal revenue collections.   This court has held that taxes, thus collected on imports, are customs duties.   *United States* v. *Shallus*, 9 Ct. Cust. Appls. 168, T. D. 37999; *Batjer* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726; *United States* v. *Billin*, 9 Ct. Cust Appls. 286, T. D. 38223; *Porges & Levy* v. *United States*, 10 Ct. Cust. Appls. 244, T. D. 38575; *Shaw & Co.* v. *United States*, 11 Ct. Cust. Appls. 226, T. D. 38990.   These cases followed the general principles laid down in *Brown* v. *Maryland*, 12 Wheat. 419 [436].   However, it will be noted that in all the cases cited in this court, the importation was spirits, under a different paragraph from that relating to alcoholic perfumery and a provision that did not direct the taxes should be considered as "internal-revenue collections."   It will also be noted that in each case cited the court held the imposition of a double tax was proper under the provisions of the particular internal-revenue and tariff acts in force at the respective times.   But here, manifestly, the congressional intent was to levy a tax on alcoholic perfumes imported, equal to the internal-revenue tax imposed on domestic alcohol.   The fact remains that Congress ordered both to be collected and hence two separate taxes were collected on the same article of importation.

This continued until the enactment of the revenue act of February 24, 1919.   This act was a general revision of the internal-revenue system.   In this act, under Title VI, Tax on Beverages, section 600, the following provisions were made:

SEC. 600 (a). That there shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States  *  *  *  *in lieu of the internal-revenue taxes now imposed thereon by law*, a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon  *  *  *  to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law.  *  *  *

(c) *In lieu of the internal-revenue tax now imposed thereon* by law there shall be levied and collected upon all perfumes hereafter imported into the United States containing distilled spirits, a tax of $1.10 per wine gallon  *  *  *.   Such tax shall be collected by the collector of customs and deposited as internal revenue collections, under such rules and regulations as the Commissioner, with the approval of the Secretary, may prescribe.

The italics in the quotations above are ours.

In referring to the war revenue act of October 3, 1917, the language is: "*In lieu of the internal-revenue tax now imposed by law.*"   The same provision is found as to the disposition of the collections as internal-revenue funds as were found in the war revenue act of

October 3, 1917. It is true the words found in section 300 of the last named act, "in addition to the tax now imposed by law," are not found in section 600 of the act of February 24, 1919. But the language used is: "*In lieu of the internal-revenue tax now imposed by law.*" Of necessity, if this latter provision be in lieu of the former and the former was an additional tax, it follows the latter would also be an additional tax.

Would anyone contend that the revenue act of February 24, 1919, by section 600 (a) had repealed paragraph 48 of the tariff act of October 3, 1913, because both treated the same subject matter? We do not think so. Both provisions were in full force and effect and both taxes or impositions were collectible. Whether both be treated as customs duties, or the first as a customs duty and the second as an internal-revenue tax, the fact is obvious that Congress intended them both to be collected.

We come, finally, to the enactment of the Tariff Act of 1922. As to the provisions of paragraph 62 hereinbefore referred to, the Committee on Ways and Means of the House of Representatives said in its report:

The present tariff bill carries for the first time a logical arrangement and gradation of duties on perfume materials and finished perfumes. The simpler products and raw materials, such as animal perfume materials (civet, musk, castoreum, and ambergris), essential oils and floral products, such as pomades, concretes, and essences, have been placed on the free list. The natural or synthetic aromatic chemicals, an industry which was created and developed in the United States during the period of the war, have been given a duty of 35 per centum ad valorem in paragraph 56, as they represent a separate industry utilizing many of the essential oils as raw materials. The compounds and mixtures of essential oils, natural or synthetic aromatic chemicals and floral products, which require only the addition of alcohol to make them into finished perfumes, are given a rate of duty slightly less than that of finished perfumes. It is in this group of products that the classification of 1912 was particularly weak and many hundreds of thousands of dollars in revenue were lost to the Government on these nearly finished perfumes. *On the finished perfume ready for ultimate consumption the rate of duty imposed is the same as that levied in the act of 1913, which, however, is only slightly higher than the rate in the act of 1909.*

These rates were subsequently changed to those now in the act.

Obviously, the Congress was here attempting a general revision of paragraph 48 of the act of October 3, 1913, and nothing more. To argue that it was the intent of Congress, by paragraph 62 of the Tariff Act of 1922, to repeal the provisions of section 600 (c) of the revenue act of February 24, 1919, we think goes far beyond any inference to be gathered from a fair consideration of both acts. The Congress had considered the act of February 24, 1919, as an internal-revenue measure and it was considering the Tariff Act of 1922 as a general revision of customs duties. If the provisions of the tariff act of October 3, 1913, and of the revenue act of February 24, 1919, as we

have held on numerous occasions in cases hereinbefore cited, could be and were concurrently operative, by a parity of reasoning the Tariff Act of 1922, being a revision of the subject matter covered by the tariff act of October 3, 1913, and the revenue act of February 24, 1919, are concurrently operative. We believe a fair consideration of the history of this legislation demonstrates that such was the intent of the Congress. If such is the case, it is the plain duty of this court to so construe the law as to give effect to that intent. *United States* v. *White*, 2 Ct. Cust. Appls. 80, T. D. 31632, and cases therein cited.

The judgment of the court below is *affirmed*.

### DISSENTING OPINION BY SMITH, JUDGE

I regret exceedingly that I can not see my way clear to concur in the conclusion reached by the Presiding Judge.

The whole question in the case is: Did the general Tariff Act of 1922 repeal that part of section 600 of the revenue act of 1919, which provided that—

there shall be levied and collected upon all perfumes hereafter *imported* into the United States containing distilled spirits, a tax of $1.10 per wine gallon, and a proportionate tax at a like rate on all fractional parts of such wine gallon. Such a tax shall be collected by the *collector of customs* and deposited as internal-revenue collections, under such rules and regulations as the commissioner, with the approval of the Secretary, may prescribe. ·(Italics not quoted.)

That provision imposed a tax on imported perfumes while such perfumes were still in the hands of the collector of customs and in my opinion such a tax is a customs duty. Even if Congress had expressly called the tax an internal-revenue tax, it would still be a customs duty inasmuch as it would still be a tax laid on imports under the control of customs officials. The essential nature of a thing can not be altered by giving it a new name. An impost or duty on imports is a customs tax and remains a customs tax whether it be called a property tax, a license tax, or an internal-revenue tax. The status of a tax is determined by its nature and characteristics and not by what it is called. *Brown* v. *Maryland,* 12 Wheat. 419; *Almy* v. *California,* 24 How. 169, 173; *May* v. *New Orleans,* 178 U. S. 496–501; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489.

I admit that repeals by implication are not favored, but it is also well settled that a statute covering the whole subject matter of an antecedent statute repeals the latter, unless a contrary intention is clearly indicated. The scope and history of the act of 1922 demonstrates to a conclusion that it was a general revision of the tariff laws of the country and was intended to cover the whole field of duties imposed on imported goods.

Section 1 of the act of 1922 expressly provides:

That on and after the day following the passage of this act, except as otherwise specially provided for in this act, there shall be levied, collected, and paid upon all articles when imported from any foreign *country into the United States* * * * *the rates of duty which are prescribed by the schedules and paragraphs of the dutiable list of this title.*   (Italics not quoted.)

That section limits the duty on perfumes to those prescribed by section 62 of the act.

Section 62 provides that perfumery, including cologne and other toilet waters and articles of perfumery, shall pay a duty of 40 cents per pound and 75 per centum ad valorem; if they do not contain alcohol, 75 per centum ad valorem.   No other duty is laid on perfumery by the act of 1922.   Section 319 of the act of 1922 declares that all goods, wares, and merchandise imported prior to the act for which no entry has been made and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by that act *and to no other duty* upon the entry or the withdrawal thereof.   With those provisions and the history and manifest scope of the act of 1922 in mind, I am satisfied that all previous tariff acts were repealed by implication unless expressly continued in force by the act of 1922.   *Norris v. Crocker,* 13 How. 429; *United States v. Claflin,* 97 U. S. 546, 552; *King v. Cornell,* 106 U. S. 395, 396; *United States v. Tymen,* 11 Wall. 88, 92.

If, however, subsection (c) of section 600 of the act of 1919, laying a tax on imported perfumes, is not a customs duty and is an internal-revenue tax, it is evident that we have no jurisdiction of the subject matter and that we have no right to determine the merits of the importer's protest.   The internal-revenue laws of the United States prescribe that protests against the collection of internal-revenue taxes shall be directed to the appropriate *collector of internal revenue,* from whose decision formerly an appeal could be taken directly to the Commissioner of Internal Revenue.   Now, if the protestant is dissatisfied with the commissioner's decision an appeal may be noted to the Board of Tax Appeals and after the board's decision recourse may be had to the appropriate United States district court, but not this court.   Assuredly, therefore, neither the Board of General Appraisers nor this court has any jurisdiction of controversies arising out of the collection of excise or internal revenue taxes.   *Christie Street Commission Co. v. United States,* 126 Fed. 991; 14 Stat. 152; Rev. Stat., sec. 3226.

### DISSENTING OPINION BY BARBER, JUDGE

I concur in the views expressed in the dissenting opinion of Judge Smith.

It seems to me that the opinion of the majority fails to give due force to the scope and intent of the Tariff Act of 1922.

Of course, the purpose of Congress was to provide therein for customs duties on imported merchandise so long as the act remained in force. That is clearly indicated by the first section of Title I, wherein under the subhead of "Dutiable list" it is stated in positive language that, except as otherwise specially provided for in the act, there shall be levied, collected, and paid upon all imported articles the rates of duty prescribed by the paragraphs of that list.

The same purpose is evidenced in section 644, which expressly repeals all laws inconsistent with the provisions of the act.

The precise question, therefore, is whether the duties provided in paragraph 62, which is part of Title I of the act, are all the customs duties that can be assessed on the merchandise here. I think they are.

A careful examination of such cases as are cited in the majority opinion to the proposition that the rule of repeal by implication is more stringently applied in considering customs statutes than those of a general nature will, I think, show that the authorities that gave rise to the announcement and application of that rule considered statutes that imposed special taxes, statutes that were amendatory of earlier ones, or contained provisions that were auxiliary thereto for the purpose of more effectually guarding against fraud in the collection of revenue.

It is manifest that the Tariff Act of 1922 is in none of these classes.

The applicable rule as to repeals by implication is well stated in *City Realty Co.* v. *Robinson*, 183 Fed. 176—cited in the main opinion—as follows:

Repeals of statutes by implication are not favored, and, unless it clearly appears that the two acts are so inconsistent that they can not be reconciled and stand together, the former act will not be deemed as having been repealed. Also, that when the Legislature takes up the whole subject anew and covers the entire subject-matter of the former statute, and evidently intends it as a substitute for it, the prior act will be repealed thereby, although there may be no express words to that effect, and there may be in the old act provisions not embraced in the new act.

Applying this rule, I can reach no other conclusion than that Congress intended, as already stated, that the customs duties provided for in the act of 1922 were to supersede such duties provided for by any prior statute. If section 600 (c) had expressly denominated the tax therein imposed to be a customs duty, I think the question here never would have arisen.

Congress exercised meticulous care in the act of 1922 whenever commodities containing alcohol were mentioned. See, for instance, paragraphs 10, 13, 34, 35, 39, 40, 58, 59, and 63 of the dutiable and 1567, 1568, and 1631 of the free lists.

Paragraph 750 contains the specific provision that berries and fruits prepared or preserved containing 5 per centum or more of alcohol shall

be dutiable at $5 per proof gallon on the alcohol contained therein, in addition to the rates prescribed therefor in Title I, and also that nothing in the act shall be construed as permitting the importation of intoxicating liquor in violation of the eighteenth amendment to the Constitution or any act of Congress providing for its enforcement.

Paragraph 801 provides that "the duties prescribed in Schedule 8 and imposed in Title I shall be in addition to the internal-revenue taxes imposed under existing law or any subsequent act."

I think this provision, when considered in connection with the first part of section 1 already referred to, clearly implies that the duties imposed by Title I were all the customs duties to be thereafter collected on the merchandise named in that title; that the only addition that could be made thereto were the internal-revenue taxes imposed by other statutes, and not that the duties imposed in Title I were in addition to some other customs duty.

The opening declaration of the report of the Committee on Ways and Means, quoted in the main opinion, confirms that view so far as perfumery is concerned. It stated that—

The present tariff bill carries for the first time a logical arrangement and gradation of duties on perfume materials and finished perfumes.

If other customs duties were also assessable thereon by virtue of prior statutes, that statement was either inaccurate or misleading.

Can there be any doubt that the committee meant and Congress understood that for the purposes of ascertaining the duties upon perfumes thereafter imported it would only be necessary to refer to paragraph 62 of the act, assuming it became law?

This case as viewed by the majority of the court really involves the right to collect two separate customs duties upon the same importation by virtue of two acts of different dates. It is, at least, doubtful whether the collection of both is authorized thereunder. In such cases, as has often been held, the taxpayer is entitled to the benefit of the doubt.

I would reverse the judgment below.