ALEX. D. SHAW & Co. *v.* UNITED STATES (No. 3528) [1]

[1] T. D. 45980.

United States Court of Customs and Patent Appeals, October 31, 1932

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*William Whynman* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 7, 1932, by Mr. Brown and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant imported certain distilled spirits in July, 1921. The collector levied a tax of $2.60 per proof gallon under paragraph 237 of the then existing Tariff Act of 1913 and also a tax of $2.20 per proof gallon under section 600 (a) of the Revenue Act of 1918, approved February 24, 1919, 40 Stat. 1057, then in force.

There are two protests involved. One claims that the tax levied under section 600 (a), *supra*, is not applicable; the other claims that the tax levied under paragraph 237, *supra*, is not applicable. The importer admits that one of the taxes is applicable, but contends that any reasonable construction of section 600 (a), *supra*, compels the conclusion that only one of the items of tax above referred to can be applicable.

The material portions of the statutes involved follow:

Tariff Act of 1913:

237. Brandy and other spirits manufactured or distilled from grain or other materials, and not specially provided for in this section, $2.60 per proof gallon.

Revenue Act of 1918:

SEC. 600 (a). That there shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section 604, *in lieu of the internal-revenue taxes now imposed thereon by law*, a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon,

to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law. (Italics ours.)

The United States Customs Court, Third Division, in a brief opinion by Judge Cline, held that the issue in the case had been settled contrary to protestant's claim in the case of *Shaw* v. *United States*, 11 Ct. Cust. Appls. 226, T. D. 38990, and also cited *Arden* v. *United States*, 13 Ct. Cust. Appls. 42, T. D. 40879.

Appellant then filed a petition for a rehearing in which it was denied that the issue had been settled in *Shaw* v. *United States, supra*, and pointed out that the court had not passed upon the new issue raised by the appellant, which question was the proper construction of the phrase "in lieu of the internal-revenue taxes now imposed thereon by law" found in section 600 (a), *supra*.

The court denied the rehearing, adhered to its original decision, and, in its opinion denying the motion for rehearing, answered appellant's contentions and said, in part, as follows:

\* \* \* Congress has clearly indicated an intention to levy $2.20 per gallon "in lieu of" any internal-revenue taxes imposed by law upon the merchandise at the time of the enactment of section 600 of the act of 1918. If there were no such internal-revenue taxes in effect at that time, then the words "in lieu of" are mere harmless verbiage but can not be construed as rendering nugatory the provisions of either act.

We think the judgment of the court below was correct. We also think that this issue has been decided by this court in opinions to which brief reference will be made.

In *Shaw* v. *United States, supra*, this court held that imported spirits, warehoused in 1917 and 1920, but withdrawn for consumption after the Revenue Act of 1918 went into effect, were subject to the duty imposed by paragraph 237 of the Tariff Act of 1913 and also the duty imposed by section 600 (a) of the Revenue Act of 1918 and said:

As it is admitted that paragraph 237 of the act of 1913 is still in force, and as all taxes imposed on imports in customs custody by section 600 of the revenue act approved February 24, 1919, are customs duties, it follows that all of the spirits here involved were subject to a duty of $2.60 per gallon and to an additional duty either of $2.20 per gallon if withdrawn for nonbeverage purposes subsequent to February 24, 1919, or of $6.40 per gallon if withdrawn for beverage uses after that date. (Par. 237, tariff act 1913; sec. 600, revenue act approved Feb. 24, 1919.)

In *Shaw* v. *United States*, 12 Ct. Cust. Appls. 88, T. D. 40024, this court held that the taxes levied by the provision of section 600 (a) of the Revenue Act of 1918 were "in lieu of internal-revenue taxes," and that they could not be extended to mean in lieu of customs duties, and held, therefore, that tax should be levied on the spirits under both provisions of the law.

In *Arden* v. *United States, supra*, this court had under consideration paragraph 62 of the Tariff Act of 1922 and section 600 (c) of the

revenue act approved February 24, 1919. While the exact question that is now before us was not before us in the *Arden* case, much that is said there, we think, points to the correctness of our conclusion herein.

In brief and in oral argument, the importer has argued at great length and with much apparent plausibility that when section 600 (a) of the Revenue Act of 1918 went into effect there were no internal-revenue taxes or any other kind of tax then imposed by law except those imposed by section 237 of the Tariff Act of 1913, and that by the use of the term "in lieu of the internal-revenue taxes now imposed thereon by law," Congress could have had nothing else in mind than to make the new tax take the place of the only existing tax, which was a customs tax provided for in the 1913 act. It is pointed out that the Revenue Act of 1918 expressly repealed the tax provision of the Revenue Act of 1917 and that, this having been repealed, the use of the term "in lieu of the internal-revenue taxes now imposed thereon by law" could only apply to the 1913 tariff provision.

It is true that Congress could have accomplished the same purpose which we think it did accomplish by leaving out the expression "in lieu of [etc.]," since it is obvious that the provision in the new revenue bill took the place of the tax in the old revenue act. It seems to us that the expression, although somewhat loosely used, must have been used to express the idea that the new tax in the 1918 revenue act was to take the place of the tax in the 1917 revenue act which it thereby repealed.

The history of the times when the Revenue Act of 1918 was enacted into law, especially that history which relates to the need of increased revenue is so well known as to require no extended citation here. It is sufficient to say that when Congress enacted this provision into law it is unthinkable that it wanted to reduce revenues on merchandise of this character rather than to increase them. If we were to give to the controverted provision the interpretation contended for by the importer it would be to hold, contrary to the obvious intent of the legislature, that in this wartime taxing provision, Congress intentionally reduced the amount of revenue to be raised from imported spirits. No plausible reason has been suggested why Congress would have so intended or did so intend, and we know of no such reason which can be suggested.

In *United States* v. *Stone & Downer Co.*, 274 U. S. 225, the Supreme Court of the United States rejected this court's interpretation of the wool provision in the Emergency Tariff Act of May 27, 1921, chiefly upon the ground that Congress could have intended no such result as this court, owing to the nature of the language used, felt compelled

to bring about. In an opinion by Chief Justice Taft is found the following:

In this case, as in every other involving the interpretation of a statute, the intention of Congress is an all important factor. The greatest light is thrown on that intention in this case by an examination of the existing conditions and the anticipated evils against which by this legislation Congress sought to protect the country.

After discussing the conditions which prompted the legislation and pointing out the anomalous result which would flow from the importer's construction of the language used, the court said:

If the language of the statute is such that such results can not be avoided, of course it must be enforced accordingly. If Congress by its language has made a mistake, and so has failed in its purpose, this Court can not supply by its decision the omission of a necessary legislative provision to effect its purpose. With the intent of the Act clearly in mind, however, we must see whether it is true that the language used can only bear the construction insisted upon by the importers and upheld by the Court of Customs Appeals, or whether there is a broader and more reasonable construction that can be fairly placed upon the statute which will serve the plain Congressional purpose.

In the case at bar, we are not disposed to give the phrase used in section 600 (a), *supra*, the construction contended for by the importer for the reason, if for no other, that to do so would be attributing to Congress the intentional doing of a thing which, under the circumstances, it could not have reasonably intended. The language used in the controverted provision does not compel such a construction. The construction we have above indicated would seem to better "serve the plain congressional purpose."

The United States Customs Court correctly overruled the protests, and its judgment is *affirmed*.