PORGES & LEVY *v.* UNITED STATES (No. 2032).[1]

1. EVIDENCE—PRESUMPTION THAT CUSTOMS OFFICERS DISCHARGE DUTIES.
   Where liquor was entered for warehouse on July 1 and the gauger's report was dated August 29, in the absence of showing as to when the gage was made, it will be presumed that it was made July 1, since the Customs Regulations require it to have been made at that time.

2. CONSTRUCTION, PARAGRAPH 244, TARIFF ACT OF 1913, AND SECTION 300, WAR REVENUE ACT OF OCTOBER 3, 1917—GAGE OF LIQUOR.
   The proviso of paragraph 244, tariff act of 1913, that the collector can "make no constructive or other allowance for breakage or leakage or damage on wines, liquors, cordials, or distilled spirits" can not be taken to modify section 300, war revenue act of October 3, 1917, taxing liquor in bond at the time of its enactment, so as to make the quantity dutiable under the tariff act the same as that subject to the additional duty imposed by the war revenue act. Section 300 taxes the *actual*, not the *constructive*, quantity.

United States Court of Customs Appeals, December 21, 1920.

APPEAL from Board of United States General Appraisers, Abstract 43620.

[Reversed.]

*Brooks & Brooks (Frederick W. Brooks, jr., and Ernest F. A. Place* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General *(John J. Mulvaney,* special attorney, of counsel), for the United States.

---

[1] T. D. 38575 (38 Treas. Dec., 838).

[Oral argument Nov. 4, 1920, by Mr. Place and Mr. Mulvaney.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

On July 1, 1917, the appellants imported and entered for warehouse at the port of New York, 12 casks of whisky, which casks had a total capacity of 1,898 gallons. On August 29, 1917, the gauger reported that five of the casks having a capacity of 747 gallons contained only 718 gallons and that seven of the casks with a capacity of 1,151 gallons contained only 1,058½ gallons, a difference of 121½ gallons between the capacity of the casks and the quantity of whisky which they actually contained at the time the gauge was made. Whether the gauge was made on August 29, 1917, the date of the report, or at the time the goods were entered for warehouse does not appear from the report. As it is the positive duty, however of the gauger to gauge wine, spirits, and liquors before they are sent under general order (arts. 1112, 1117, Customs Regulations, 1915), we think it must be assumed that the five casks contained only 718 gallons and the seven casks only 1,058½ gallons of whisky at the time the goods were entered for warehouse. The five casks containing 718 gallons of whisky were withdrawn for consumption prior to October 3, 1917, and there was in warehouse when the revenue act of that date was passed the seven casks containing 1,058½ gallons.

Under the provisions of paragraph 240 of the act of 1913 the collector assessed duty on all the casks at the rate of $2.60 per proof gallon on the basis of the capacity of the casks, less 2½ per cent for normal outage. No additional duty was imposed on the five casks withdrawn prior to October 3, 1917, but the additional duty of $2.10 per gallon prescribed by that act was assessed on the capacity quantity of the seven casks then in bond less 2½ per cent of that quantity for normal outage. Paragraph 240 of the tariff act of 1913, and section 300 of the act of October 3, 1917, in so far as material to the case, are as follows:

Par. 240. Cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and other spirituous beverages or bitters of all kinds, containing spirits, and not specially provided for in this section, $2.60 per proof gallon.

Sec. 300. That on and after the passage of this act there shall be levied and collected on all *distilled spirits in bond at* that time or that have been or that may be then or thereafter produced in or imported into the United States, * * * (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $2.10) on each proof gallon, * * * (Italics are ours.)

The importers did not protest against the duty assessed by the collector under paragraph 240 of the act of 1913, but did protest that the additional duty of $2.10 per gallon levied on the seven casks should have been liquidated on the basis of the actual quantity imported and warehoused, and no more.

The Board of General Appraisers overruled the protest and the importers appealed.

The Government contends that under the second proviso of paragraph 244 the collector can make "no constructive or other allowance for breakage or leakage or damage on wines, liquors, cordials, or distilled spirits," and, in effect, that that proviso must be read into section 300 of the act of October 3, 1917, and requires the assessment of the additional duty on the capacity of the casks regardless of the quantity actually imported and warehoused. It is therefore argued that as section 300 imposes the additional duty therein prescribed on distilled spirits that "have been or that may be then or thereafter imported" into the United States, that duty attaches whether or not such distilled spirits were in esse at the time of the passage of the act.

We can not agree that the interpretation put upon section 300 is in accord either with its language or with the legislative intent which that language fairly imports. In our opinion section 300 imposes a duty, first, on all distilled spirits *in bond at the time of the passage of the act;* second, on all distilled spirits not in bond "that have been or that may be then * * * imported" and still in customs custody; third, on all distilled spirits thereafter imported into the United States. In view of the second proviso to paragraph 244 of the act of 1913, there may be some question as to whether leakage allowance can be allowed on liquors imported and not in bond but still in customs custody. It is very clear to our minds, however, that section 300 imposed the additional duty of $2.10 on the distilled spirits in bond *at the time of the passage of the act* and withdrawn for beverage purposes, and that only the distilled spirits then actually in bond were subject to the additional duty.

To hold otherwise would simply mean that no effect whatever should be given to the words "in bond at the time of the passage of the act," thereby ignoring completely a provision which Congress deliberately inserted as a part of the section. That Congress saw fit to provide for distilled spirits in bond at the time of the passage of the act and for distilled spirits then or thereafter imported can be accounted for only on the theory that it intended to subject to the additional tax not only distilled spirits in bond which were imported, but also distilled spirits in bond which were produced in the United States, and to avoid discrimination required both classes of bonded distilled spirits to pay the additional tax on the actual quantity in bond. That there was no intention to levy the additional duty on imported distilled spirits which had passed out of customs custody is made apparent by section 303 of the act, which provides that the additional tax shall be levied, assessed, and collected on such distilled spirits as *are held for sale* by the retailer or

by any other person, corporation, partnership, or association, which levy, assessment, and collection is a matter of internal revenue and not of customs jurisdiction. Indeed, the collector of customs himself seemed to have recognized that interpretation of the act, inasmuch as he levied no additional duty on the five casks of whisky withdrawn for consumption prior to October 3, 1917.

The gauger's report of the gauge, which we must presume was made by him prior to the entry of the goods into bonded warehouse, shows that the amount of whisky which went into bond and was presumptively in bond at the time of the passage of the act was 1,058½ gallons, and on the basis of that number of gallons we think the additional duty should have been liquidated.

The decision of the Board of General Appraisers is therefore *reversed*.