## SHAW & CO. ET AL. *v.* UNITED STATES (No. 2115).[1]

INTERNAL REVENUE—CUSTOMS.

> The provision of section 600 (*a*), revenue act of 1918 (40 Stats. L., 1057), levying additional taxes on certain imported distilled spirits describes a customs duty and not an internal-revenue tax. Such spirits, imported and warehoused in 1917 and 1920 but withdrawn for consumption after the revenue act went into effect, were subject to the duty imposed by paragraph 237, tariff act of 1913, and also to that imposed by the revenue act.

United States Court of Customs Appeals, January 13, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8435 (T. D. 38719).

[Affirmed.]

*W. P. Preble* for appellants.

*William W. Hoppin,* Assistant- Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument October 25, 1921, by Mr. Preble and Mr. Mulvaney.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

9,816.06 gallons of whiskey, brandy, and other liquors imported and warehoused in 1917 and 5,173.24 gallons imported and warehoused in 1920 were withdrawn for consumption subsequent to February, 1919; 6,600.36 gallons of the 1917 importations withdrawn in March, April, May, and June, 1919, for beverage purposes,

---

[1] T. D. 38990.

were assessed with a duty of $2.60 per gallon under paragraph 237 of the tariff act of 1913 and with an additional duty of $6.40 under section 600 of the revenue act of 1918.

2,209.72 gallons of the 1917 importations, it is claimed by the importers (protest 937180), were withdrawn for nonbeverage purposes in 1920 and paid a duty of $2.60 per gallon under paragraph 237 of the tariff act of 1913 and an additional tax of $1.10 per proof gallon levied thereon under the revenue act of 1918. This claim, however, is not sustained by the report of the collector, from which it appears that before the passage of the revenue act of 1918 he liquidated the entries under the act of 1917 at $2.60 per gallon, plus $2.10, not $1.10 per gallon, from which it would seem that the collector assumed that the liquors were to be withdrawn for beverage purposes.

The report of the collector further establishes that the goods were not actually released from customs custody until after the revenue act of 1918 became effective, and that on reliquidation the rates prescribed by paragraph 600 of the act of 1918 were substituted for the rate of $2.10 per gallon assessed on the original liquidation under the act of October 3, 1917.

1,006.28 gallons, the rest of the 1917 importations, and the 5,173.24 gallons, imported in 1920, withdrawn for nonbeverage purposes in 1920, were assessed for duty at $2.60 per gallon under the provisions of paragraph 237 of the tariff act of October, 1913, and with an additional duty of $2.20 per gallon under the provisions of section 600 of the revenue act of 1918, approved February 24, 1919.

It is stipulated between the Government and the importers that on 6,302.04 gallons of the whiskies imported in 1917 and withdrawn for beverage purposes after the passage of the revenue act of 1918 there was refunded to the importers $4.30 per gallon. Just how that amount per gallon was reached does not appear from the record or the stipulation. If the importers paid $2.60 under the act of 1913 and $2.10 under the act of 1917 and subsequently paid $6.40 under the act of 1918, they *apparently* would be entitled to a refund of $2.10 per gallon. On the other hand, if they paid $2.60 under the act of 1913 and $2.10 under the act of 1917 and subsequently paid $2.60 under the act of 1913 and $6.40 under the act of 1918, they would *apparently* be entitled to a refund of $4.70. As there is nothing, however, either in the record or the stipulation which establishes that they paid $4.70 under the acts of 1913 and 1917, and subsequently $2.60 and $6.40 under the acts of 1913 and 1918, we are unable to reach any conclusion as to what the refund should have been, and therefore we do not deal with that question or with the sufficiency of the protests on that point.

The importers protested, first, that the distilled spirits imported and withdrawn for beverage purposes were not subject to the additional tax of $6.40 per gallon provided for in section 600 of the revenue act of 1918; second, that the distilled spirits imported and withdrawn for nonbeverage purposes were not subject to the additional tax of $2.20 imposed by said section 600; third, that the revenue act approved February 24, 1919, repealed section 300 of the act of October 3, 1917, and imposed an internal revenue and not a duty tax on distilled spirits, with the result that such spirits are subject to no duty other than the $2.60 per gallon provided for in paragraph 237 of the act of October 3, 1913.

The Board of General Appraisers overruled the protests and the importers appealed.

Leaving out of consideration the matter of the refund, concisely stated, the contention of the importers is that there is no duty imposed on imported distilled spirits other than that prescribed by paragraph 237 of the act of October 3, 1913, admitted to be still in force, and that therefore the liquors withdrawn from warehouse should have been subjected to a duty of $2.60 per gallon and no more.

The position of the Government is that all distilled spirits are subject not only to the duty of $2.60 per gallon provided for in paragraph 237 of the act of 1913, but to the additional duties prescribed by the revenue act of 1918; that is to say, $2.20 per gallon on spirits withdrawn for nonbeverage purposes and $6.40 on spirits withdrawn for use as beverages.

Section 600 of the act approved February 24, 1919, levies a tax, first, on all distilled spirits in bond; second, on all distilled spirits produced in the United States, and third, on all distilled spirits imported into the United States.

Taxes levied on domestic spirits, whether in bond or not, are beyond question excise or internal revenue taxes, and taxes levied on distilled spirits imported into the country and still in customs custody are just as certainly imposts on imports and therefore customs duties. The designation of a tax on domestic products or industries as a customs duty would be an inexcusable misnomer, and it is no less a misnomer to call a levy on imports in customs custody an internal revenue tax. True enough, excises and duties are both in a sense indirect taxes; nevertheless, they are so essentially different that neither can be converted into the other or into anything else by simply giving it another name. If it were otherwise the constitutional provisions which reserve to Congress the right to regulate commerce among the several States and which inhibit the States from laying imposts or duties on imports or exports without the consent of Congress might be avoided and defeated by the simple process of dubbing such taxes

license fees or stamp taxes, as was attempted by the State of Maryland in 1821, by California in the "fifties," and by the State of Tennessee in 1881.—Brown *v.* Maryland (12 Wheat., 419); Almy *v.* California (24 How., 169–173); Robbins *v.* Shelby County (120 U. S., 489).

Moreover, the limitation on the power of Congress to lay a tax or duty on articles exported from any State might be readily evaded by the adroit expedient of imposing a stamp tax on bills of lading or by levying on such articles a so-called internal revenue tax. The National Government can not impose any tax burden on exports of the States, and the States on the other hand can not subject either imports or exports to any impost, whatever may be the name or guise it takes. In other words, the name of a tax does not determine its nature.—May *v.* New Orleans (178 U. S., 496–507); Fairbank *v.* United States (181 U. S., 283–290–291).

Whatever, therefore, may have been the "excise" or "internal revenue" taxes levied by the act approved February 24, 1919, the taxes laid by it on imports in customs custody were essentially "customs duties" determinable and collectible as prescribed by law.—United States *v.* Shallus (9 Ct. Cust. Appls., 168; T. D. 37999); Porges & Levy *v.* United States (10 Ct. Cust. Appls., 244; T. D. 38575); Batjer & Co. et al. *v.* United States (11 Ct. Cust. Appls., 60; T. D. 38726).

As it is admitted that paragraph 237 of the act of 1913 is still in force, and as all taxes imposed on imports in customs custody by section 600 of the revenue act approved February 24, 1919, are customs duties, it follows that all of the spirits here involved were subject to a duty of $2.60 per gallon and to an additional duty either of $2.20 per gallon if withdrawn for nonbeverage purposes subsequent to February 24, 1919, or of $6.40 per gallon if withdrawn for beverage uses after that date. (Par. 237, tariff act 1913; sec. 600, revenue act approved Feb. 24, 1919.)

The decision of the Board of General Appraisers must therefore be *affirmed.*