FABER, COE & GREGG (INC.) *v.* UNITED STATES (No. 3329)[1]

[1] T. D. 44851.

United States Court of Customs and Patent Appeals, April 15, 1931

*Gerry & Wakefield (James L. Gerry* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham*, special attorney, of counsel), for the United States.

[Oral argument December 8, 1930, by Mr. Gerry and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

The appeal involves cigars imported into the United States from Cuba on November 17, 1927. They were assessed for duty by the collector at the port of New York at $4.50 per pound and 25 per centum ad valorem under paragraph 605 of the Tariff Act of 1922, less 20 per centum by virtue of the provisions of section 320 of that act and the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba, December 11, 1902.

Paragraph 605 and section 320 read, respectively, as follows:

Par. 605. Cigars, cigarettes, cheroots of all kinds, $4.50 per pound and 25 per centum ad valorem, and paper cigars and cigarettes, including wrappers, shall be subject to the same duties as are herein imposed upon cigars.

SEC. 320. That nothing in this act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the act of December 17, 1903, chapter 1.

The pertinent parts of the treaty read as follows:

ARTICLE I

During the term of this convention, all articles of merchandise being the product of the soil or industry of the United States which are now imported into the Republic of Cuba free of duty, and all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now imported into the United States free of duty, shall continue to be so admitted by the respective countries free of duty.

ARTICLE II

During the term of this convention, all articles of merchandise not included in the foregoing Article I and being the product of the soil or industry of the Republic of Cuba imported into the United States shall be admitted at a reduc-

tion of twenty per centum of the rates of duty thereon as provided by the Tariff Act of the United States approved July 24, 1897, or as may be provided by any tariff law of the United States subsequently enacted.

#### ARTICLE VIII

The rates of duty herein granted by the United States to the Republic of Cuba are and shall continue during the term of this convention preferential in respect to all like imports from other countries, and, in return for said preferential rates of duty granted to the Republic of Cuba by the United States, it is agreed that the concession herein granted on the part of the said Republic of Cuba to the products of the United States shall likewise be, and shall continue, during the term of this convention, preferential in respect to all like imports from other countries. * * *

#### ARTICLE IX

In order to maintain the mutual advantages granted in the present convention by the United States to the Republic of Cuba and by the Republic of Cuba to the United States, it is understood and agreed that any tax or charge that may be imposed by the national or local authorities of either of the two countries upon the articles of merchandise embraced in the provisions of this convention, subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported.

The treaty was approved by the Congress by the act of December 17, 1903, 33 Stat. 3; U. S. C., title 19, sections 124 and 125.

Shortly after the merchandise was entered the importer purchased from the collector of internal revenue certain revenue stamps in payment of the tax provided by section 400 of the Revenue Act of 1926, U. S. C., title 26, section 832; and such stamps were affixed to the imported merchandise and canceled by customs officials while the merchandise was in customs custody, in accordance with U. S. C., title 26, section 845.

The importer filed two protests. Protest 276973–G was filed within 60 days after the purchase of the stamps from the collector of internal revenue and prior to liquidation. Protest 276974–G was filed within 60 days after liquidation of the entries. In each of the protests the importer claimed that it was entitled to a reduction of 20 per centum of the sum paid for revenue stamps. No contention was made that the duties provided for in paragraph 605, *supra*, were unlawfully assessed.

The pertinent part of section 832, *supra*, reads as follows:

SEC. 832. Cigars and cigarettes; tax; amount. Upon cigars and cigarettes manufactured in or imported into the United States, which on or after the expiration of thirty days after February 26, 1926, are sold by the manufacturer or importer, or removed for consumption or sale, there shall be levied, collected, and paid under the provisions of existing law, the following taxes, to be paid by the manufacturer or importer thereof: * * *

Section 845 reads:

SEC. 845. Imported cigars; stamping while in custody of customs officers; penalty. All cigars imported from foreign countries shall have the same stamps

affixed in payment of the internal-revenue tax as are prescribed for cigars manufactured in the United States. The stamps shall be affixed and canceled by the owner or importer of the cigars while they are in the custody of the proper customhouse officers, and the cigars shall not pass out of the custody of such officers until the stamps have been so affixed and canceled, but shall be put up in boxes containing quantities as prescribed in this chapter for cigars manufactured in the United States, before the stamps are affixed. And the owner or importer of such cigars shall be liable to all the penal provisions of this title prescribed for manufacturers of cigars manufactured in the United States. Whenever it is necessary to take any cigars so imported to any place other than the public stores of the United States, for the purpose of affixing and canceling such stamps, the collector of customs of the port where such cigars are entered shall designate a bonded warehouse to which they shall be taken, under the control of such customs officer as such collector may direct. And every officer of customs who permits any such cigars to pass out of his custody or control, without compliance by the owner or importer thereof with the provisions of this section relating thereto, shall be deemed guilty of a misdemeanor, and shall be fined not less than $1,000 nor more than $5,000, and imprisoned not less than six months nor more than three years.

The evidence of record was submitted on May 22, 1928, on the trial of the protest filed before liquidation, 276973-G.

It appears from the record that at the time of entry the importer presented a request to the collector of customs for the so-called internal-revenue stamps, and that, consistent with the customs administrative practice, a written statement for the information of, and addressed to, the collector of internal revenue was prepared by the customs officer who assessed the imported merchandise with duty, in which the imported merchandise was described, and the number, denomination, and value of the stamps required by law to be affixed thereto were declared and certified. It further appears that the written statement was signed by the importer and delivered to the collector of internal revenue, from whom the revenue stamps were purchased by appellant's customhouse broker; that, while the merchandise was in customs custody, the revenue stamps were affixed thereto and canceled by customs officers; and that the collector of customs received no part of the money paid for the revenue stamps.

Thereafter, on March 19, 1929, protest 276974-G came on for trial and was submitted to the court below upon the record made in protest 276973-G. No additional evidence was introduced.

On the trial in protest 276973-G, counsel for the Government moved to dismiss the protest on the ground that it was prematurely filed.

Thereafter, when protest 276974-G came on for trial, counsel for the Government moved to dismiss it on the ground that the tax levied on the imported merchandise was not a customs duty, and that it was neither a charge nor an exaction made by the collector of customs and, therefore, was not involved in his liquidation of the entries.

The court below held that protest 276973–G was untimely and should, therefore, be dismissed; that the involved taxes were not customs duties but, on the contrary, were internal-revenue taxes with which the collector of customs had no concern; that the payment of such taxes did not involve charges or exactions by the collector of customs; that the importer had no right of protest; and that the court had no jurisdiction in the premises, and, accordingly, dismissed the protest.

It is contended by counsel for appellant that the involved taxes are customs duties and are subject to 20 per centum reduction under the provisions of the Cuban treaty and sections 124 and 125, *supra;* that, as it was the duty of the collector of customs under the provisions of section 845, *supra,* and article 465, Customs Regulations of 1923, to determine the amount of the so-called revenue taxes to be levied and paid, and to refuse to permit imported merchandise subject to said duties or taxes to pass out of his custody or control until the required revenue stamps had been affixed to the merchandise and canceled, appellant had the right to protest under the provisions of section 514 of the Tariff Act of 1922; that, although the administrative practice of levying the so-called revenue taxes on cigars imported into the United States from Cuba without deduction of 20 per centum had continued throughout the life of the treaty and had never been questioned by the Government of Cuba, nevertheless such administrative practice can not make legal that which is illegal; that appellant is entitled to a reduction of 20 per centum of the so-called internal-revenue taxes; and that, therefore, the judgment of the court below should be reversed.

It is contended by counsel for the Government that the involved taxes are internal-revenue taxes, not customs duties; that, as the collector of customs received no part of the money paid for the so-called internal-revenue stamps, and as the involved taxes were not customs duties, appellant had no right to protest under the provisions of section 514 of the Tariff Act of 1922, and that neither the court below nor this court has jurisdiction of the involved issues.

Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. *Brown* v. *State of Maryland,* 12 Wheat. 419; *Almy* v. *California,* 24 How. 169; *Robbins* v. *Shelby County,* 120 U. S. 489; *May* v. *New Orleans,* 178 U. S. 496; *Fairbank* v. *United States,* 181 U. S. 283; *United States* v. *Shallus & Co.,* 9 Ct. Cust. Appls. 168, T. D. 37999; *Porges & Levy* v. *United States,* 10 Ct. Cust. Appls. 244, T. D. 38575; *Batjer & Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 60, T. D. 38726; *Shaw & Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 226, T. D. 38990; *Arden* v. *United States,* 13 Ct. Cust. Appls. 42, T. D. 40879.

Section 845 provides that the taxes shall be levied and collected, while imported cigars áre in customs custody and that the cigars shall not pass out of the custody of the customs officers until the tax has been paid and the revenue stamps affixed to the involved merchandise and canceled. The statute further provides that any customs officer who permits any such imported cigars to pass out of his custody or control before internal-revenue stamps representing the amount of the tax have been affixed to the merchandise and canceled shall be deemed guilty of a misdemeanor and shall be fined not less than $1,000, nor more than $5,000, and imprisoned not less than six months, nor more than three years.

Obviously, although the statute does not in terms so prescribe, it is the duty of the customs officers to determine the amount of the tax to be levied on the imported cigars. This is so because the statute requires that the goods be detained in customs custody until internal-revenue stamps equal to the amount of the tax to which they are subject be affixed to the merchandise. We must hold, therefore, that the involved taxes, although additional to and separate from the regular or primary duties provided by the Tariff Act of 1922, are, nevertheless, as applied to imported merchandise, customs duties, as held by the Supreme Court and this court in the cases hereinbefore cited.

Having concluded that the involved taxes are customs duties, although additional to and separate from the primary or regular duties provided by the Tariff Act of 1922, the next question requiring our consideration is the right of appellant to protest under the provisions of section 514 of the Tariff Act of 1922.

It appears from the record that the number, denomination, and value of the stamps required by law to be affixed to the merchandise were determined by a customs officer and certified in writing to the collector of internal revenue. No doubt the collector of internal revenue has the authority to refuse to accept the statements of the collector of customs as to the amount of tax. However, in the last analysis, the collector of customs has not only the authority but it is his duty to prevent imported cigars passing from customs custody until revenue stamps representing the precise amount of the tax have been affixed to the merchandise and canceled. Furthermore, if an "officer of customs" fails to enforce the law in this respect he is subject to fine and imprisonment.

In the case of *United States* v. *Shallus, supra,* this court held that an importer had the right to protest under paragraph N of section 3 of the Tariff Act of 1913, where merchandise was assessed with additional duties under section 300 of the War Revenue Act of 1917 which provided that such duties should be "collected under the provisions of existing law." This decision was approved and followed

in the case of *United States* v. *Billin & Co.*, 9 Ct. Cust. Appls. 286, T. D. 38223.

In those cases the additional duties were collected by the collector of customs and were deposited and accounted for as duties by virtue of regulations promulgated by the Secretary of the Treasury and the Commissioner of Internal Revenue in T. D. 37391.

In the case of *Arden* v. *United States, supra,* although the question of jurisdiction was not there raised, this court held that duties levied and collected by the collector of customs on certain alcoholic perfumery, "in lieu of the internal-revenue tax now imposed thereon by law," and deposited as internal-revenue collections, were additional to the regular duties provided for in the Tariff Act of 1922 and were properly assessed and collected.

The only distinction between the *Arden* case and the case at bar, as regards the question of jurisdiction, is that there the collector of customs collected the duties, whereas in the case at bar the money was paid by appellant to the collector of internal revenue.

Section 514 of the Tariff Act of 1922 provides that—

All decisions of the collector, including the legality of all orders and findings entering into the same as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his liquidation of any entry, * * * shall be final and conclusive upon all persons, unless the importer, consignee, or agent * * * shall, within sixty days after, but not before such liquidation or decision,

file a protest in writing.

The collector had authority to refuse delivery of the imported merchandise until the involved duties were paid and the required revenue stamps affixed to the merchandise. He is required by statute to determine the amount of those duties for the purposes hereinbefore mentioned. We are of opinion that those questions were involved in the collector's liquidation of the entries; that the importer had the right to protest against such liquidation; and that the customs court had, and, on appeal, this court has, jurisdiction to dispose of the issues raised by the importer in protest 276974–G, filed after liquidation.

Protest 276973–G, filed prior to liquidation, related to the rate and amount of duties chargeable against the imported merchandise. Such questions can be raised by protest after, but not before, liquidation. Accordingly, the court below was right in dismissing this protest as premature. *Waddell* v. *United States,* 13 Ct. Cust. Appls. 424, T. D. 41342.

Preliminary to a discussion of the involved treaty it may be said that, generally, customs duties become a lien on imported merchandise at the moment of its arrival within the limits of a port of entry.

*United States* v. *Vowell and McClean,* 5 Cranch 368; *Arnold et al.* v. *United States,* 9 Cranch 103; *United States* v. *Sandoz Chemical Works,* 14 Ct. Cust. Appls. 21, T. D. 41542. Furthermore, regardless of how they may be designated, taxes imposed on imported merchandise while it retains its "distinctive character" as an import are customs duties, whether they be imposed at the time of importation or subsequent thereto. *Brown* v. *Maryland* and *May* v. *New Orleans, supra.*

It was provided in Article I of the treaty that all products of the soil or industry of the United States which were then imported into the Republic of Cuba free of duty, and all products of the soil or industry of the Republic of Cuba which were then imported into the United States free of duty, should continue to be so admitted by the respective countries.

Article II provides that during the operation of the treaty all products of the soil or industry of the Republic of Cuba, imported into the United States, not covered by Article I, "shall be admitted at a reduction of twenty per centum of the rates of duty thereon as provided by the Tariff Act of * * * 1897, or as may be provided by any tariff law of the United States subsequently enacted."

Article VIII provides, among other things, "that the rates of duty herein granted by the United States to the Republic of Cuba" shall continue, during the life of the treaty, to be preferential "in respect to all like imports from other countries."

Then, with full knowledge of the imposition by the laws of the United States of internal-revenue taxes on cigars and other products produced in the United States, and the application of such laws and taxes to like products imported into the United States from foreign countries, subsequent to their importation and prior to their entering into the commerce of the country, the contracting parties provided in Article IX of the treaty that—

it is understood and agreed that any tax or charge that may be imposed by the national or local authorities of either of the two countries *upon the articles of merchandise embraced in the provisions of this convention, subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported.* (Italics ours.)

It will be observed that, although Article VIII provides that the rates of duty "herein granted" shall continue preferential in respect to like imports from other countries, Article IX provides that any *tax* or *charge* imposed by the United States on the products of the Republic of Cuba, *subsequent to their importation and prior to their entering into consumption,* shall be imposed and collected *without discrimination* upon like articles imported from other countries.

The provisions of Article IX relate to all articles, whether dutiable or free of duty, included within the provisions of the treaty, and to all

taxes imposed by the United States on the products of the Republic of Cuba *subsequent to their importation and prior to their entering into consumption.*

In view of the fact that, generally, customs duties become a lien on imported merchandise at the moment of its arrival within the limits of a port of entry, and, as taxes imposed on imported merchandise, while it retains its "distinctive character" as an import, are customs duties, regardless of whether they are imposed at the time of importation or subsequent thereto, it is obvious that the contracting parties intended to distinguish between the regular tariff duties (made preferential in respect to all like imports from other countries, Articles II and VIII) and other additional taxes, including additional customs duties, imposed on *imported merchandise subsequent to its importation and prior to its entering into consumption* (required by Article IX to be "imposed and collected without discrimination upon like articles whencesoever imported"), and to provide that, as to the regular tariff duties, the rates therein provided should continue preferential in respect to all like imports from other countries, whereas the additional taxes, including additional customs duties, should be imposed and collected *without discrimination* upon like articles whencesoever imported.

Accordingly, we are of opinion that appellant is not entitled to a reduction of 20 per centum of the additional customs duties imposed by U. S. C., title 26, section 845, and section 400 of the Revenue Act of 1926, U. S. C., title 26, section 832, *supra*, and we so hold.

The judgment below is *modified*, being *affirmed* so far as it dismissed protest 276973–G and in all other respects *reversed*, and the cause is *remanded* for proceedings consistent with the views herein expressed