(C. D. 1219)

Westco Liquor Products Co. *v.* United States

United States Customs Court, Third Division

(Decided March 6, 1950)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; EKWALL, J., concurring in part

JOHNSON, Judge: A shipment of sherry wine was imported from Spain and entered for warehousing at the port of San Francisco on January 6, 1944. The entry was liquidated by the collector on June 7, 1944, duty being assessed at the appropriate rate upon the basis of 1,181.57 gallons. The internal revenue tax was also assessed by the collector of customs on 133 gallons at 40 cents per gallon and upon 999 gallons at the rate of 60 cents per gallon, assessment being made upon a total of 1,132 gallons.

The plaintiff's claim in this case is limited to three butts or barrels of the imported sherry which were withdrawn from warehouse after liquidation. Butt numbered 4 was withdrawn on January 22, 1945, butt numbered 2 was withdrawn on March 27, 1945, and butt numbered 3 was withdrawn on October 26, 1945. Duty assessed and collected by the collector is not at issue. At the time of the withdrawals the internal revenue tax was paid at the rate assessed upon liquidation of the entry. However, on November 16, 1945, a year and 5 months after liquidation, the collector of customs demanded that the importer pay an additional sum of $468.86. This amount represented an increase in internal revenue taxes on each of the three withdrawals from 60 cents per gallon to $2 per gallon, and is based upon an analysis of the sherry wine made by Government chemist when a regauge of the wine was effected at the request of the importer immediately prior to withdrawal. As the analysis showed that the alcohol by volume contained in the three butts was 21.4 per centum for two and 21.3 per centum for one, the collector demanded the difference between the 60-cent rate and the $2 rate applicable, according to the

Internal Revenue Code, to wine having an alcoholic content of over 21 per centum by volume.

The plaintiff contends that the demand of the collector was illegal and void for the reason that it was made more than 90 days after liquidation and more than 90 days after withdrawals numbered 1387 and 1832, although within 30 days of withdrawal numbered 694.

Plaintiff further contends that since the volume of alcohol contained in the wine was found to be under 21.5 per centum, it should have been considered as 21 per centum.

Counsel for the Government contends that the collector acted within his lawful authority in making the demand for additional internal revenue taxes and collecting the same. To sustain that position, Government counsel argues that the tax is not a customs duty for the purpose of any statute relating to the customs revenue because it is not designated, nor treated as such in section 3030, Internal Revenue Code, as amended, wherein said tax is imposed.

And, further, it is argued that section 528 [1] of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides that no tax imposed by any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue unless the law imposing such tax or charge designates it as a customs duty, and that the tax in question was not so designated. Government counsel points out that after the amendment of the tariff law, the Customs Regulations of 1943 were amended (section 16.15 (a)) [2] to include certain sections of the Internal Revenue Code which shall be treated in the same manner as customs duties.

As this court understands it, the Government contends that inasmuch as section 3030 of the Internal Revenue Code, which provides the rate of tax to be imposed upon wines, is not included in §16.15 of the customs regulations, and none of the sections mentioned therein impose a tax upon imported wine, the levy in question is in the nature of an exaction rather than a duty, but still protestable under the provisions of section 514, Tariff Act of 1930.[3]

---

[1] Title 19, U. S. Code, § 1528.  Taxes not to be construed as duties.

No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws.  Nothing in this section shall be construed to limit or restrict the jurisdiction of the United States Customs Court or the United States Court of Customs and Patent Appeals. (June 17, 1930, ch. 497, Title IV, § 528, as added June 25, 1938, 5 p. m. E. S. T., ch. 679, § 20, 52 Stat. 1087.)

[2] 1949 Edition Code of Federal Regulations, Title 19, Customs Duties, §16.15  *Taxes; applicability of laws relating to customs duties.*  (a)  Import taxes imposed by I. R. C. sections 2490, 3420, and 3500 shall be construed to be customs duties subject to the limitations specified in I. R. C. sections 2493, 3430, and 3501, respectively, and in the liquidation of entries such taxes shall be treated in the same manner as duties imposed by the Tariff Act of 1930, as amended.

(b)  Provisions of law (including preferences and exemptions) relating only to customs duties shall not be applied to taxes or other charges which are not construed to be customs duties, notwithstanding such taxes or charges may be collected on imported merchandise in customs custody by collectors of customs.

[3] SEC. 514.  PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and

In other words, counsel for the Government urges that although section 514 may be invoked by the plaintiff in filing a protest against this particular demand made by the collector, the requirement in said section that an assessment of the collector becomes final and conclusive against all parties does not apply when the demand involves an internal revenue tax. The authority relied upon for this novel theory that the collector of customs is empowered to adjust internal revenue taxes, without regard to the Tariff Act of 1930, would appear to be sections 16.5 (d) and (e) of the Customs Regulations of 1943.[4]

In view of the foregoing regulations, Government counsel insists that the collector was lawfully justified in making the demand for additional internal revenue taxes; that the law expressly provides that imported wine is taxable at the rate applicable at the time it is "removed for consumption or sale" (section 3030 (a), Internal Revenue Code); and that the liquidation of the entry for duty purposes did not stop the collector from carrying out the other provisions of law relative to the collection of internal revenue taxes.

findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

[4] 16.5 (d) Internal-revenue taxes on alcoholic beverages imported in barrels, casks, or similar containers shall be collected only on the number of proof gallons (or wine gallons if below proof) and fractional parts thereof actually entered or withdrawn for consumption. The quantity determined on the basis of the original customs gauge shall be considered the quantity actually entered or withdrawn and no regauge shall be made for the purpose of assessing internal-revenue taxes unless the lapse of time or the condition of the containers prior to entry or withdrawal indicates that the quantity shown by such original gauge has been substantially reduced by evaporation or leakage, or unless prior to entry or withdrawal the person making the entry or withdrawal makes a written request for a regauge. If fewer than 90 days have elapsed since the date of the original gauge, the request shall include a statement of the reasons for believing that such original gauge does not correctly indicate the quantity to be withdrawn. When request for regauge of imported wine of not over 24 per centum of alcohol by volume is made in accordance with this paragraph, an affidavit from the person making the entry or withdrawal as to the actual number of wine gallons and fractional parts thereof entered or withdrawn for consumption may be accepted in lieu of actual regauge, provided the affidavit is filed within 5 days after the date of entry or withdrawal and an abnormal outage is not disclosed. Customs duties shall be collected on the gallonage determined on the basis of the original customs gauge.

(e) When imported distilled spirits upon which collectors of customs are required to collect internal-revenue taxes under the provisions of I. R. C. section 2800 (f) and section 24.11 of these regulations, or imported wines upon which collectors of customs are required by the said sections to collect such taxes, are regauged in accordance with paragraph (d) of this section in order that the internal-revenue taxes may be collected on the gallonage actually withdrawn from warehouse for consumption, as contemplated by I. R. C. sections 2800 (a) (1) and 3030 (a), *the internal-revenue taxes shall be adjusted on the warehouse withdrawal according to the gauge at the time of withdrawal.* A notation shall be made on the withdrawal that the adjustment has been made in accordance with the provisions of this paragraph. No adjustment of customs duties shall be made as a result of a regauge for internal-revenue purposes in view of the provisions of section 563 (a), Tariff Act of 1930, as amended. (R. S. 251, sec. 315, 46 Stat. 695, sec. 6, 52 Stat. 1081, sec. 500 (a), 46 Stat. 729, secs. 505, 624, 46 Stat. 732, 759; 19 U. S. C. 66, 1315, 1500 (a), 1505, 1624.) [Italics not quoted.]

Counsel for the Government further contends that the rate applicable to wine exceeding 21 per centum by volume of alcohol was the proper rate for the wine in question as there is a difference between the percentage of alcohol according to the proof and the percentage by volume, and regulations pertaining to the proof, particularly in reference to the dropping of percentages under five-tenths, are not applicable to the duty upon wine regulated by the volume of alcohol contained therein.

The courts have passed upon the merits in the case of *A. J. Coccaro* v. *United States*, 36 Treas. Dec. 652, Abstract 43044, and in *Vandegrift & Co.* v. *United States*, 3 Ct. Cust. Appls. 176, T. D. 32462, where the court stated:

* * * Clearly any wine that contains alcohol in quantities perceptible and ascertainable above 14 per cent comes within the classification which fixes the higher rate of duty. * * *

Under authority of foregoing cases, contentions of plaintiff that the higher tax was unlawful are overruled.

Although Government counsel acknowledges that section 514 is applicable so far as it pertains to the filing of a protest against the collector's assessment of internal revenue taxes, it is urged that the collection of internal revenue taxes upon alcoholic beverages is not governed by said section of the tariff act. The only authorities relied upon are the new section 528 of the Tariff Act of 1930, as amended, and sections 16.15 and 16.5 (*d*) and (*e*), *supra*.

An examination of the Internal Revenue Code and the Code of Federal Regulations discloses that 26 U. S. Code § 2800 (f) provides that the internal revenue tax imposed upon distilled spirits imported into the United States, under regulations prescribed by the Commissioner of Internal Revenue, shall be collected and deposited in the same manner as other internal revenue taxes, except that such collection and depositing shall be by the collector of customs instead of by the collector of internal revenue. The Code of Federal Regulations, Cum. Supp., Title 26, § 191.11, page 8024, shows that the Commissioner of Internal Revenue has provided that collections and deposits of internal revenue taxes by collectors of customs shall be made in accordance with customs regulations.

The customs regulations, appearing in the Code of Federal Regulations, Cum. Supp., Title 19, part 16, § 16.1, page 4880, provide that all entries covering imported merchandise, except those for transportation in bond or for immediate exportation, shall be liquidated. The same regulations provide for the filing of a claim for refund of internal revenue taxes when collected in excess of the amount found due on the liquidation or reliquidation of an entry, that said claim shall be accompanied with reasons for allowance, if in language indicating that

internal revenue taxes were paid to the collector of customs in excess of the tax found due the Government upon the liquidation or reliquidation of the entries.[5]

The Customs Manual provides as to internal revenue tax collections, § 24.27, that such entries, whether or not customs duties are collected thereon, shall be regarded as dutiable entries, and that the *amount of internal revenue tax accruing* on the total amount of spirits or wines covered by an entry *shall be separately computed and stated in the liquidation or reliquidation of an entry*.

Although sections 16.1 and 24.36 (e) and (f), *supra*, pertain to refunds of excessive internal revenue taxes collected upon imported merchandise, it would follow that if liquidation or reliquidation of entries were necessary in order to determine such refunds, a liquidation or reliquidation would also be necessary in order to determine that a greater amount of tax was due. Particularly would this be true in view of section 16.1, *supra*, requiring the liquidation of entries, and section 24.27, *supra*, requiring internal revenue tax entries to be treated the same as dutiable customs entries.

In referring to section 528, *supra*, Government counsel states:

\* \* \* One of the principal reasons which prompted the addition of Section 528 to the Tariff Act of 1930 was to distinguish between the application to imported merchandise of tariff classification principles and classification principles under the internal revenue laws. (See defendant's brief, p. 5.)

Upon a review of the Hearings before the Committee on Ways and Means, House of Representatives, Seventy-fifth Congress, First Session, relative to H. R. 6738, the Customs Administrative Bill,[6]

---

[5] Code of Federal Regulations, Cum. Supp., Title 19, § 24.36 (e) and (f):

(e) *A claim for refund of internal-revenue taxes collected in excess of the amount found due on the liquidation or reliquidation of an entry shall be filed* on internal-revenue Form 843 in duplicate by the person named on the notice of refund, in his name, with the collector of internal revenue for the internal-revenue district in which the claimant resides. The notice of refund shall be attached to and filed in support of such claim. Internal-revenue Form 843 may be procured from collectors of customs or collectors of internal revenue.

(f) Each claim for refund of internal-revenue taxes shall be confined to refunds under entries filed in the same customs collection district. \* \* \* *The reason why the claim should be allowed may be briefly stated in language indicating that internal-revenue taxes were paid to the collector of customs in excess of the tax found due the Government upon the liquidation or reliquidation of entries for which notices of refund were issued by the collector of customs* \* \* \*. [Italics not quoted.]

[6] The Unrevised Committee Print—Customs Administrative Bill, Hearings before the Committee on Ways and Means, House of Representatives, Seventy-fifth Congress, First Session, on H. R. 6738, pages 112–113:

Mr. HESTER.

\* \* \* \* \* \* \*

The next section is section 18, which appears on page 23 of the bill.

This section would provide that internal-revenue taxes on imports should be construed to be customs duties only if the law under which they are imposed provides that they shall be treated as customs duties.

\* \* \* \* \* \*

This provision will not remove controversies concerning such taxes from the jurisdiction of the customs courts where such courts now have such jurisdiction—now, here is the point—but will preclude any court or administrative officer from holding that provisions of law, particularly exemptions and preferences, applying only to duties are applicable also to internal-revenue taxes accruing on imports.

Here is the situation, gentlemen: At the present time we have a case where, under the Cuban trade agreement, they are entitled to a 20-percent preferential duty. They are claiming that that preference includes

it would appear that it was not the purpose of section 528 to distinguish between tariff principles applied to customs duties from such when applied to internal revenue taxes, but, on the other hand, the section referred to was added particularly to prevent the application of preferential rates, such as accorded Cuba in the Cuban Trade Agreement to duties, from being applied to internal revenue taxes. In other words, the provision was enacted for the express purpose of making it clear that when Congress intends exemptions and preferences to extend to internal revenue taxes, it will so state in the statute. That, according to the hearings, was the sole purpose of the provision. Such a provision would prevent internal revenue taxes imposed on imported liquors from being construed as subject to preferences applicable to customs duties. The Hearings before a Subcommittee of the Committee on Finance, United States Senate, Seventy-fifth Congress, Third Session, on H. R. 8099, relative to the Customs Administrative Act, on page 44, also clearly emphasizes the fact that it was not the intention of Congress to enact any law which would arbitrarily empower any collector of customs to make a demand upon an importer of alcoholic beverages for additional taxes without regard to the limitations placed upon such demands by the customs laws.[7]

---

internal-revenue taxes. The purpose of this provision is to make it clear that when Congress intends exemptions and preferences to extend to internal-revenue taxes, Congress will say so in the statute. ·

That is the sole purpose of this provision.

MR. CROWTHER. What does that apply to particularly—some commodity with respect to which some question has been raised? Does it apply to liquor? ·

MR. JOHNSON. This would prevent the internal-revenue taxes imposed on imported liquors from being construed as customs duties and subject to preferences applicable to customs duties. And, Mr. Disney, the import taxes on vegetable oils which were imposed under the Revenue Acts of 1934 and 1936 by amendment to the Revenue Act of 1932 are imposed under a law containing a specific provision that those taxes shall be treated, for the purposes of all laws relating to the customs revenues, as duties. It is that type of case that is intended to be covered by the words [reading]:

unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws.

MR. DISNEY. I had particular reference to petroleum oil.

MR. JOHNSON. The petroleum-oil duty is levied under the same provision of law but was imposed in 1932.

MR. THOMPSON. And therefore subject to the preferences?

MR. JOHNSON. Yes, sir; if it is a product of Cuba.

\* \* \* \* \* \* \*

[7] Customs Administrative Act—Hearings before a Subcommittee of the Committee on Finance, United States Senate, Seventy-fifth Congress, Third Session, on H. R. 8099, pages 44–45: .

MR. LEVETT. Now, we come to section 18 on page 23, "Taxes not to be construed as duties." \* \* \*

\* \* \* \* \* \* \*

It has been the policy of this Government for many years to have one tribunal pass on these cases covering imports. I think, and in fact I feel sure that would be bad in that it would take away the jurisdiction of the courts and cause us to go to different courts on the same importation, one as to the internal revenue, which is a duty, and the other on what is conceded to be duties.

SENATOR WALSH. Mr. Johnson, have you a different construction than Mr. Levett on this section?

MR. JOHNSON. Yes. As Mr. Levett says, the Customs Court and the Court of Customs and Patent Appeals have held that they have jurisdiction over questions involving the internal revenue laws in their application to imports. They have cited the Supreme Court decisions as authority for the fact that all charges on imports collected while the goods are in the customs custody are duties. In recent cases, or in a recent case particularly, an internal revenue tax was held to be a duty for the purpose of an exemption provided in the tariff law that had never before been construed to apply to an internal revenue tax. That case has very serious implications and this section is aimed to overrule that case. It is not aimed at the jurisdiction of the court.

In the case of *Faber, Coe & Gregg (Inc.)* v. *United States*, 19 C. C. P. A. 8, T. D. 44851, the question was whether or not an internal revenue tax assessed upon certain cigars imported from Cuba was subject to the 20 per centum preferential rate allotted Cuba. That decision appears to have definitely settled the question that such internal revenue taxes, assessed upon imported merchandise, were not subject to a reduction of 20 per centum. From a consideration of the tariff hearings, *supra,* it would appear that the only effect of section 528 is a legislative ratification of judicial decisions. However, in that case, the Government moved to dismiss the protest upon the ground that an internal revenue tax assessed upon the cigars in question was not a customs duty, and that it was neither a charge nor an exaction made by the collector of customs and therefore was not involved in his liquidation of the entries. The Customs Court held that the taxes were internal revenue taxes and not customs duties and dismissed the protest for want of jurisdiction. Upon appeal, however, the lower court was reversed, the appellate court stating:

> It is contended by counsel for the Government that the involved taxes are internal-revenue taxes, not customs duties; that, as the collector of customs received no part of the money paid for the so-called internal-revenue stamps, and as the involved taxes were not customs duties, appellant had no right to protest under the provisions of section 514 of the Tariff Act of 1922, and that neither the court below nor this court has jurisdiction of the involved issues.

> Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. *Brown* v. *State of Maryland,* 12 Wheat. 419; *Almy* v. *California,* 24 How. 169; *Robbins* v. *Shelby County,* 120 U. S. 489; *May* v. *New Orleans,* 178 U. S. 496; *Fairbank* v. *United States,* 181 U. S. 283; *United States* v. *Shallus & Co.,* 9 Ct. Cust. Appls. 168, T. D. 37999; *Porges & Levy* v. *United States,* 10 Ct. Cust. Appls. 244, T. D. 38575; [etc.].

Also, in the case of *United States* v. *Mitsui & Co., Ltd.,* 29 C. C. P. A. 154, C. A. D. 185, the appellate court again stated:

> All taxes imposed on imports while in customs custody were at the time of the importation herein essentially customs duties no matter how they might have been designated by Congress.

SENATOR WALSH. Well, a provision could be inserted to indicate that this section was not intended to remove an old jurisdiction or some jurisdiction that the courts took under the old cases.

MR. JOHNSON. The Treasury Department believes that this proposed language would not affect the question of jurisdiction, but it would be glad to consider any such saving language.

MR. LEVETT. Yes. If there could be some saving language there we would have no complaint at all. I recall the case that Mr. Johnson referred to.

SENATOR WALSH. What you are suggesting is that in the desire or effort of the Treasury Department to overrule this particular case cited you fear it may reach into a larger field?

Mr. LEVETT. Exactly, and I might say that is the opinion of practically every attorney I have talked with.

  *    *    *    *    *    *    *

MR. LEVETT. Mr. Johnson, could not you draw a saving clause covering that particular case?

MR. JOHNSON. This language, of course, is our draft to accomplish just that thing.

SENATOR WALSH. Without attempting to disturb the old order and practice?

MR. JOHNSON. Yes.

SENATOR WALSH. You have drawn definite language with that in mind?

MR. JOHNSON. Yes, sir. We believe we have accomplished that. We will be glad to consider any suggestions.

The procedure by means of which the collector of customs is directed to determine the amount of duty due the Government upon imported merchandise is the liquidation of the entry. As internal revenue taxes on imported merchandise are to be collected in accordance with customs regulations, it follows that the tax is determined, as in the case of duties, by a liquidation of the entry. In fact, according to the customs laws, that is the only way it may be legally determined. The tax the subject of this controversy was demanded by the collector and paid under protest long after the liquidation of the entry had become final and conclusive upon all parties. It does not appear from the entry papers that any attempt was made by the collector at the port of San Francisco to reliquidate the entry within the time prescribed by law. Any liquidation made after the 60-day limit provided by statute would, of course, have been illegal and void. Therefore, inasmuch as the collector could not act within the law, he arbitrarily demanded payment of the additional internal revenue tax. An importer is entitled to know when he is free from the imposition by the collector of customs of either a duty or internal revenue tax assessment upon merchandise he legally imports. Section 1528, title 19, United States Code, specifically provides that protection.

It would seem to this court that the better practice, in order to alleviate a situation such as here presented, would be for the collector to refrain from liquidating a warehouse entry involving alcoholic beverages until after the liquors had been withdrawn from warehouse, or else ascertain the volume of alcohol in wine at the time of importation and warehousing. Surely, at that time the volume of alcohol would be greater than after it had become the subject of evaporation through the passage of time in the warehouse. Obviously, the controversy here would not have arisen had the volume of alcohol been determined at the time of warehousing.

In the case of *Wah Shang Co.* v. *United States*, 17 Cust. Ct. 173, Abstract 51274, the collector of customs at the port of San Francisco on October 27, 1941, had liquidated an entry of Chinese wines assessing duty thereon at the appropriate rate. On January 14, 1942, more than 60 days after liquidation, the collector reliquidated the entry, at which time an internal revenue tax of $4 per gallon was assessed. The court ruled, as to plaintiff's claim that the reliquidation was illegal and void, that under the provisions of section 514 of the Tariff Act of 1930 the collector had no power to reliquidate after the expiration of the 60-day period, and held that the reliquidation was null and void.

Inasmuch as it is the opinion of this court that the internal revenue tax in question is a customs duty for collection purposes and subject to the customs laws governing the assessment and collection of duty,

the demand upon the importer to pay an additional tax, long after the liquidation or reliquidation of the entry had become final and conclusive upon all parties, including the collector, is illegal and void. Plaintiff's claim is therefore sustained and judgment will be entered in favor of the plaintiff directing the collector to take action accordingly.

## CONCURRING IN PART

EKWALL, Judge: I agree with the majority decision insofar as it holds that the rate of internal revenue tax applicable .to the wine involved was that imposed by the collector for the reason that the alcoholic content of said wine exceeded 21 per centum by volume. I regret that I am unable to agree with the construction placed by the majority upon section 528 of the Tariff Act of 1930, and the holding that the internal revenue tax here assessed is a customs duty. The law imposing the tax (section 3030, Internal Revenue Code, as amended, 26 U. S. C. sec. 3030, as amended by sec. 1650, same title), does not designate it as a customs duty nor does it contain a provision to the effect that it shall be treated as a duty imposed under the customs laws. Congress in enacting section 528, *supra*, presumably was cognizant of the early decisions holding that taxes imposed on imports while in customs custody are essentially customs duties. *Brown* v. *Maryland*, 12 Wheat. 419; *Almy* v. *California*, 24 How. 169; *Robbins* v. *Shelby County*, 120 U. S. 489; *May* v. *New Orleans*, 178 U. S. 496; *Fairbank* v. *United States*, 181 U. S. 283; *United States* v. *Shallus & Co.*, 9 Ct. Cust. Appls. 168, T. D. 37999; *Porges* v. *United States*, 10 Ct. Cust. Appls. 244, T. D. 38575; *Batjer & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726; *Shaw & Co. et al.* v. *United States* 11 Ct. Cust. Appls. 226, T. D. 38990; *Arden* v. *United States*, 13 Ct. Cust. Appls. 42, T. D. 40879. In the light of that presumptive knowledge it enacted said section 528.

It is difficult to understand how that section can be considered a legislative ratification of judicial decisions inasmuch as its effect is to prohibit the internal revenue taxes here involved from being considered customs duties, although they are imposed on imports while in customs custody.

As I view the case, we must construe the demand of the collector made in this case to be an exaction. Certainly it is anomalous to hold that this tax is a customs duty for all purposes except the assessment of preferential rates of regular customs duty thereon. The logical solution of this confused situation, it would seem to me, is to consider the internal revenue tax imposed on liquors, wines, etc., which is not designated as a customs duty in the statute, as an exaction (within the jurisdiction of the Secretary of the Treasury) under the terms of section 514 of the Tariff Act of 1930. That section pro-

vides that protest against such exactions shall be filed "within sixty days after, but not before such * * * decision * * *." The instant protest was filed on January 8, 1946, which was within the statutory period from the date of the collector's demand for additional internal revenue taxes, as evidenced by the "Notice of Duties Due" (exhibit 1) dated November 16, 1945.

I agree with the finding of the majority that the reliquidation is void. The Government claims said reliquidation is merely an adjustment of duties under the provisions of section 16.5 (e) of the Customs Regulations of 1943. However, we have the official stamp which designates the collector's action as a reliquidation. This shows that said reliquidation did not take place until January 26, 1948. The merchandise was withdrawn on the following dates:

    Butt No. 4_____ withdrawn January 22, 1945
    Butt No. 2_____ withdrawn March 27, 1945
    Butt No. 3_____ withdrawn October 26, 1945

In the case of warehouse goods an attempted reliquidation made more than a year from the date of withdrawal is a nullity. *Bertrose Co.* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893; *Taylor & Co.* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; and *United States* v. *Peter McQuade*, 16 Ct. Cust. Appls. 334, T. D. 43080.

I therefore concur in the holding that the protest should be sustained.