(C. D. 446)

Wing Duck Co. *v.* United States

United States Customs Court, First Division

(Decided March 7, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil, Richard F. Weeks*, and *Samuel D. Spector*, special attorneys), for the defendant.

Before Brown and Walker, Judges

Brown, Judge: This suit against the United States was brought at San Francisco, Calif., and there tried, to recover a tax of $2 per proof gallon presumably under section 1150 of the Liquor Tax Law of 1934.

The importer protested, claiming that the merchandise here involved, designated as Chinese shamshoo, was not subject to said tax. The importer also protested the rate of duty assessed but not the classification under paragraph 24, Tariff Act of 1930, and the importer also made a claim as to some of the merchandise withdrawn from warehouse after a certain date.

All claims, however, were abandoned except the claim against the tax under the Liquor Tax Law of 1934.

At the original trial at San Francisco on February 21, 1938, it was established by the testimony of Arthur J. Fritz, called as a witness in behalf of the importer, that said witness was a licensed customhouse broker of long standing thoroughly familiar with customs procedure; that he had made the entry of the merchandise here in dispute and had been compelled to pay the $2 tax in addition to the customs duties assessed which, from the red-ink notations on the "summary" filed with the papers herewith, he testified were assessed under the classification of alcoholic medicinal preparations containing more than 20 per centum and less than 50 per centum of alcohol under paragraph 24 of the Tariff Act of 1930.

On the record thus made the case was decided in favor of the plaintiff on February 9, 1939, in a decision by this division, C. D. 97, 2 Cust. Ct. 102. This decision was made on the authority of *Shun Yuen Hing* v. *United States,* 11 Ct. Cust. Appls. 331, T. D. 39143, and *Brown* v. *United States,* 11 Ct. Cust. Appls. 402, T. D. 39320.

The Government-defendant requested a rehearing on the ground that the importer had failed to establish that the merchandise involved was not "distilled spirits" within the meaning of section 1150 of the Liquor Taxing Act of 1934:

That it was not clear that the collector of customs had classified the merchandise as "medicinal preparations" and not as oils, greases, or as something else provided for *eo nomine* under paragraph 24, and that the only evidence as to the classification as "medicinal preparations" was the testimony of plaintiff's witness, Arthur J. Fritz, customhouse broker at the port of San Francisco, who was not qualified to testify because Wing Duck Co., the importer, was his client; and that the failure of the importer to call as a witness the classifying officer of the merchandise involved must be construed against the interests of the plaintiff.

A rehearing was granted by a majority of Division One. On this rehearing the case is now again before us.

At the retrial in San Francisco no new evidence of value was presented by the Government and the importer rested on the record previously made.

The Government called several witnesses whose testimony may be summarized as follows:

Harry L. Weidener testified that he was examiner of merchandise at the port of San Francisco and had examined the involved merchandise and advisorily classified same as "an alcohlic medicinal preparation containing over 20 per cent and not over 50 per cent alcohol" (R. p. 15) "at 40 cents per pound and 25 per cent ad valorem."

On the ground that the designation "shamshoo" was but a general term two samples were admitted in evidence by consent, one designated "Sum Yung" and the other "Fu Kwat" (exhibits 1 and 2) as representative of the shamshoo here involved.

At the adjourned rehearing at San Francisco on November 24, 1939, the analyses of exhibits 1 and 2 were offered and admitted in evidence as exhibit 5; over the objection of importer's counsel to whom exception was granted.

Edwin R. Miller, a Government chemist, called in behalf of the Government, testified that he had made the analyses of the exhibit 5 and found that the alcoholic content was between 47 per centum and 48 per centum by volume in addition to other ingredients.

There was nothing new in this testimony as the collector's classification, and rate of duty together with the abandonment of the claim against the rate of assessment had put this question beyond dispute before the first trial.

R. F. Love, called as a witness in behalf of the Government, testified that he had been a chemist for 28 years, 21 years of which had been in the employ of the Internal Revenue Department and that over a period of 20 years he had had occasion to analyze liquids in order to determine whether or not they were distilled—"all classes of liquor, beer, wine, distilled spirits, medicinal preparations—" (R. p. 29).

The witness further testified that what determined him was the amount of alcohol present, the amount of alcohol which can be produced by fermentation being limited to 16 to 18 per centum by volume.

After a great deal of contradictory testimony the witness closed with the following:

By Mr. TUTTLE.

Q X. Then just to close this Mr. Love, such a product, that is a medicinal product I am speaking of and describe to you, is in your opinion, I take it, as an employee of the Internal Revenue Department, a distilled spirit, regardless of the elements contained in the product, regardless of its use, so long as it contains in excess of 24 per cent of alcohol?—A. Yes, sir. (R. p. 38.)

There is nothing new here except, possibly, in the way it is stated. The Government has recurrently contended under various tariff acts and revenue acts, differing in details but essentially the same in their over-all provisions, that medicinal preparations shown to have been composed of various other elements than alcohol, were distilled spirits.

This contention was thoroughly discussed and discarded by the Court of Customs Appeals in the case of *Brown & Co.* v. *United States*, 11 Ct. Cust. Appls. 402, and we see no reason from the testimony here for us to attempt to overrule the Appellate Court's decision in the *Brown* case.

However, this is just what the Government would have us do on the basis of the opening sentence of the argument in its brief that "It appears to be assumed by both sides, that the imported shamshoo, though medicinal, is a wine."

We can find nothing in the record to indicate that the importer assumed that the merchandise was wine.

However, we take it that the foregoing assumption is based on various designations of the involved merchandise which appear on the consular invoice as "shamshoo (wine)," on the white sheet attached to the consular invoice as "5 cases of medicinal shamshoo of tiger bone wine" and "10 cases of medicinal shamshoo of deer horn & ginseng wine" with these same designations on the bill of lading and entry.

The designations for the same items, such as "5 cases of Tiger Bone" and "10 cases of Deerhorn & Ginseng" without any reference to wine, which appear on the amendment to entry which is attached to both the consular invoice and the bill of lading are entirely ignored. It is also overlooked, or at least not mentioned in the Government brief, that it was stipulated and agreed between the respective attorneys "that the two packages marked "Sum Yung" and "Fu Kwat" are representative in all material respects of the merchandise involved in the instant suit." (R. p. 13.) There is no mention here of wine. These two samples were submitted in evidence by the Government and received and marked as exhibits 1 and 2. The analyses from these samples have not been shown to be that of any known wine. It is true that the Government counsel in questioning the witness Miller, the Government witness, asked him if he had analyzed the two samples of "Chinese wine," referring to exhibits 1 and 2, and the witness said "Yes." However, as is shown in the importer's reply brief, it was long ago decided by this court that these so-called Chinese wines were not wines in fact. *Sun* v. *United States*, (G.A.) T.D. 10262; *Sun* v. *United States*, (G.A.), T.D. 10462; *Choy* v. *United States* (G.A.) T. D. 31523. In this last decision Waite, General Appraiser, gave the definition of true wine viz, "Wine is a beverage produced by fermentation, and usually contains a low percentage of alcohol."

It might be noted that the Government counsel, in pleading for the admission of these analyses of the samples taken from exhibits 1 and 2, made no mention of wine but used the following language:

Oh, your Honor, if a liquor has been distilled or a liquid has been distilled it has been distilled regardless of use. Now I need all that is in this report in order to go further and show that a liquid which shows these results on analysis is in the opinion of an expert, or has been distilled.

Nothing here about wine. His only anxiety was to get the analyses in evidence so as to show that, in the opinion of an expert, the samples analyzed had been distilled.

In the opinion of this expert, the Government's witness, R. F. Love, the two samples as shown by the analyses were distilled and that the amount of alcohol that can be produced by fermentation is limited to 16 or 18 per centum by volume. Therefore, the testimony of the Government's expert witness, if it means anything, means that the medicinal preparation here involved is not wine. This brings us back to the question of whether the medicinal preparation here involved is distilled spirits or not.

The analyses (example 5) of the samples cf "Sum Yung" and "Fu Kwat" (examples 1 and 2) show that these medicinal preparations were each composed of distilled spirits together with other ingredients. This was what was decided in *Brown & Co.* v. *United States,* 11 Ct. Cust. Appls. 402, T. D. 39320, not to be distilled spirits.

We see no reason, after carefully studying the "new testimony" produced by the Government, to go counter to the decision in the *Brown* case, and therefore reiterate our previous decision that the merchandise here involved under the general designation "shamshoo" is not distilled spirits nor is it a wine and is, therefore, not subject to the internal revenue tax of $2 per gallon which was imposed by the collector.

Judgment will issue accordingly.