(C. D. 1703)

LEE MON WINE & LIQUOR CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 19, 1955)

*Barnes, Richardson & Colburn* (*James F. Donnelly* and *E. Thomas Honey* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: Plaintiff in this case imported 450 cases of Chinese wine and entered the same for warehouse at the port of New York. Withdrawals were made on January 18, 1945, December 9, 1947, and June 7, 1948. The entry was liquidated on December 29, 1941, at which time, according to the red-ink notations thereon, customs duty was assessed under the provisions of paragraph 24 of the Tariff Act of 1930 for preparations or compounds, not specially provided for, containing more than 20 per centum and not more than 50 per centum of alcohol. At the time of liquidation, no internal revenue tax was assessed, as shown by the statement on the entry as follows: "I. R. Tax 12/18/41 None." It further appears from the official papers that at the time of the various withdrawals both customs duty and internal revenue tax were paid by the importer. On April 2, 1951, almost 3 years after the last withdrawal, the collector reliquidated the entry. As a result of the reliquidation, internal revenue tax was assessed under sections 2800 (a) (1) (6) aud 3030 (a) (1) of the Internal Revenue Code upon an amount of 1,609.832 gallons at the rate of $9 per gallon ($14,488.49), which appears to have been less than the amount paid upon withdrawal, for we find a notation on the warehouse ledger sheet (exhibit No. 3) indicating that reliquidation resulted in a refund of $400 in internal revenue taxes.

Plaintiff contends that the merchandise involved is not subject to an internal revenue tax but is dutiable only under the Tariff Act of 1930, as amended. Plaintiff further claims that the reliquidation was illegal and void, having been made more than 60 days after the original liquidation of the entry, which had become final under the terms of section 514 of the Tariff Act of 1930.

For convenience of reference, we set forth the pertinent portions of the statutes involved.

## Internal Revenue Code (26 U. S. C., 1946 ed.):

**§ 2800. Tax—(a) Rate—(1) Distilled spirits generally.**

There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $6 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. [The foregoing rate increased to $9 per gallon by Act of February 25, 1944, 58 Stat. 61, 26 U. S. C., 1946 ed., § 1650, in effect on dates of withdrawal here involved.]

**(2) Products of distillation containing distilled spirits.**

All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

*     *     *     *     *     *     *

**(6) Wines containing more than 24 percent of absolute alcohol.**

For taxation as distilled spirits of wines containing more than 24 per centum of absolute alcohol by volume, see section 3030 (a) (1).

*     *     *     *     *     *     *

**(8) * * ***

**(b) Time for payment—Bonded distilled spirits.**

For time for payment of tax on bonded distilled spirits, see paragraph (1) of subsection (a).

**§ 3030. Tax—(a) Rate—(1) Still wines.—(A) Imposition.**

Upon all still wines, including vermouth, and all artificial or imitation wines or compounds sold as still wine produced in or imported into the United States after June 30, 1940, or which on July 1, 1940, were on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid taxes at rates as follows, when sold or removed for consumption or sale:

*     *     *     *     *     *     *

All such wines containing more than 24 per centum of absolute alcohol by volume shall be classed as distilled spirits and shall pay tax accordingly.

## Tariff Act of 1930:

### SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except * * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions * * * and his liquidation or reliquidation of any entry * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation * * * be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, * * * shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry

so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

At the trial, all of the official entry papers were received in evidence, together with the official laboratory report of analysis of the wines at the time of importation, as collective exhibit No. 1. A similar report of analysis of samples offered at the trial was also admitted (exhibit No. 14). Both of these reports indicate that the merchandise contained over 24 per centum absolute alcohol by volume. There were also received the collector's letter of transmittal, with the attached departmental rulings (collective exhibit No. 2); the official warehouse ledger sheet (exhibit 3); and 10 sample bottles of the wines involved (exhibits 4 to 13, inclusive).

For convenient reference, the Government produced and there was received as collective illustrative exhibit A a copy of the Internal Revenue Department Regulations 21, as amended by Internal Revenue T. D.'s 5106 and 5694.

On behalf of the plaintiff, the secretary-treasurer of the importing firm produced the above 10 sample bottles of wine (exhibits 4–13), which he testified were taken from the instant shipment. He also stated that the labels had been placed on these bottles "at the distillery" in Hong Kong.

The Government produced as a witness a former customs examiner, now retired, from whose testimony it appears that he had passed upon the instant entry; that he is familiar with the Chinese language; that, as customs examiner at the time of importation herein, he tested each of these wines as to odor and taste and compared each with a standard sample of each type, which he kept on hand for this purpose; that he found these complied with such representative standard samples; and that he submitted samples from this shipment to the customs laboratory for report on the alcoholic content. This witness was interrogated as to the use of the wines in suit and stated that he had seen them consumed both for medicinal purposes and as beverages; that, when taken for medicinal purposes, they are "more or less a general tonic," something like our vitamins, and that, as a tonic, they are taken once or twice a day, sometimes at bedtime. He testified that they generally contain some herbs, vegetable matter, and animal matter. On cross-examination, he testified that he advisorily returned the merchandise as Chinese medicinal wines. On redirect, he stated that wines such as those here involved have a medicinal use as a general tonic.

In the view we take of the issue presented, a determination of the question whether these wines are taxable as distilled spirits under the Internal Revenue Code is not necessary to the decision.

It is contended on behalf of the Government, defendant, that, since the statute involved does not levy any internal revenue tax on imported

wines unless and until sold or withdrawn for consumption in this country, the collector should not liquidate the entry with respect thereto until that contingency occurs and the taxes become payable. Therefore, it is contended, in the original liquidation of the entry settling the duties accruing at the time of importation under the tariff act, no internal revenue tax was assessed, nor was any then payable on the merchandise, all of which was still in bonded warehouse. Further, defendant contends that the collector was required to reliquidate the entry to give finality to the matter of internal revenue taxes and to effectuate the importer's right of protest with respect thereto. Since there is no statutory limitation upon the time within which the collector must reliquidate under such circumstances, Government counsel contends that the reliquidation here involved is timely and valid.

The case of *United States* v. *Westco Liquor Products Co.*, 38 C. C. P. A. (Customs) 101, C. A. D. 446, affirming the decision of this court reported as *Westco Liquor Products Co.* v. *United States*, 24 Cust. Ct. 120, C. D. 1219, is clearly contrary to the Government's contention. There, the court had before it a shipment of sherry wine entered for warehouse on January 6, 1944. The collector liquidated the entry and assessed customs duty under the tariff act and also assessed an internal revenue tax pursuant to section 1650 of the Internal Revenue Code. The wine was withdrawn from time to time during 1945, and the internal revenue tax assessed was paid at the time of each withdrawal. On November 16, 1945, as a result of re-gauge at the time of each withdrawal, the collector demanded the additional amount shown by the re-gauge to be applicable under the statute. On January 26, 1948, the collector reliquidated, without changing the rate or amount of duty or internal revenue tax. This court and the court of appeals held that the liquidation of June 7, 1944, had become final and conclusive, in the absence of protest 60 days thereafter, and that the collector's demand for the additional tax long after the liquidation had become final was illegal and void. In arriving at that conclusion, this court made the following suggestion:

It would seem to this court that the better practice, in order to alleviate a situation such as here presented, would be for the collector to refrain from liquidating a warehouse entry involving alcoholic beverages until after the liquors had been withdrawn from warehouse, * * *.

It is contended in the Government brief that the collector in the instant case followed the court's suggestion as to the procedure to be followed in cases of this kind, in that he refrained from liquidating the entry as to internal revenue tax while the goods were still in bonded warehouse. This is not borne out by the record, which shows that the first liquidation was made with no assessment of internal revenue taxes on December 29, 1941. The reason given is found on

customs Form 4371, a part of collective exhibit 1, entitled "MEMO-RANDUM TO ACCOMPANY INVOICE," upon which appear the following notations:

Appraiser: Please report whether mdse. is subject to Internal Revenue Tax, noting C. D. 446. [This is stamped as of December 10, 1941.]

Collector: Mdse. contained in invoice is subject to C. D. 446. [This notation is stamped December 15, 1941.]

Said C. D. 446, *Wing Duck Co.* v. *United States*, held that the Chinese wines involved therein, which had been assessed with customs duty as an alcoholic medicinal preparation under paragraph 24 of the Tariff Act of 1930, were not subject to internal revenue taxes.

Counsel for the defendant contends that, so far as internal revenue taxes are concerned, the collector's reliquidation of April 2, 1951, was the first liquidation of the entry under the internal revenue laws. We find no merit in this contention. The official notations show that at the time of the first liquidation the collector found no internal revenue tax to be assessable, by reasons of decisions of this court (*Wing Duck Co.* v. *United States*, 6 Cust. Ct. 133, C. D. 446, and *Columbia Co.* v. *United States*, 5 Cust. Ct. 175, C. D. 395), which were not appealed, holding that Chinese medicinal wines, classified as medicinal preparations and containing various other elements than alcohol, are not distilled spirits nor wines, and are, therefore, not subject to an internal revenue tax. We have not been cited to any change in the law in that respect. The decision of the collector raises the presumption that he found the instant commodities to be the same or similar to those involved in the cited cases. No appeal having been taken from that decision, it became final and conclusive 60 days after the liquidation. The opinions of the Bureau of Customs set forth in the letter to the collector, which is a part of the official files, would seem to be ground for appeal in a test case, rather than ground for reliquidation long after the original liquidation had become final.

We find no evidence of a decision by the collector under the provisions of section 514, *supra*, within the statutory 60 days after December 29, 1941. Therefore, that decision and liquidation became final and conclusive in the absence of protest "upon all persons" (including the United States and any officer thereof) 60 days thereafter, there being no claim of fraud or clerical error involved.

In *Wah Shang Co.* v. *United States*, 17 Cust. Ct. 173, Abstract 51274, this court had before it the question of the legality of a reliquidation under similar circumstances to those here presented. There, a quantity of Chinese wine was entered for warehouse, customs duties assessed thereon at the appropriate rate, and the entry liquidated on October 27, 1941. On January 14, 1942, more than 60 days thereafter, the entry was reliquidated, at which time an internal revenue

tax was assessed. In that case, it appeared that the collector's action in the original liquidation was taken pursuant to a decision of this court, *Columbia Co.* v. *United States*, 5 Cust. Ct. 175, C. D. 395, which held that the Chinese wine there involved was not subject to assessment of internal revenue tax. This court sustained the claim of the plaintiff that the reliquidation was illegal, for the reason that the original liquidation had become final and conclusive, neither clerical error nor fraud having been claimed.

It has been held that the collector may reliquidate warehouse entries prior to withdrawal and that the right to protest on the part of the importer and the right to reliquidate on the part of the collector, which ordinarily terminate at the expiration of the statutory 60-day period after liquidation, are not so limited where the law or facts postpone the final determination of the rate or amount of duty or taxes until the time of withdrawal. In such cases, liquidation does not become effective until withdrawal, and the importer may protest and the collector reliquidate within 60 days thereafter. *The American Distilling Company* v. *United States*, 32 Cust. Ct. 168, C. D. 1598; *Spatola Wines, Inc.* v. *United States*, 32 Cust. Ct. 181, C. D. 1601; *Schenley Import Corp.* v. *United States*, 33 Cust. Ct. 37, C. D. 1631. In the case before us, even if we consider the dates of withdrawal as the dates of liquidation, reliquidation was untimely in that it was made almost 3 years after the last withdrawal.

Upon the record before us and in view of the decisions cited, we hold that the original liquidation in the instant case was the only legal liquidation and that the demand for any amounts as internal revenue tax long after such liquidation had become final and conclusive was illegal and void. Plaintiff's claim that the reliquidation is illegal and void is, therefore, sustained.

Judgment will be rendered accordingly.